LEWIS G. McDOWELL et al.

*v.*

THE AVON-BY-THE-SEA LAND AND IMPROVEMENT COMPANY.

[Decided February 6th, 1906.]

1. In the absence of any *lis pendens*, a suit brought by a prior owner of property in question against a water company to restrain it from cutting off the supply for a particular year to such owner's tenants does not constitute constructive notice to such owner's grantees of the water company's claim against complainant's grantor for water rents in arrears.

2. Where *mandamus* to compel defendants to refrain from refusing to furnish water to complainant's hotel would be ineffective as to the lessees, and the deprivation of such supply involved the comfortable enjoyment of such hotel, complainant and his tenants are entitled to relief by injunction.

3. In the absence of statute expressly authorizing it or making arrearages for water rents a lien on land on which the water has been used, a water company has no right to cut off the supply to the premises unless and until the arrears due from a former owner are paid.

4. Rules of a private water company which purport to authorize the water company to refuse to furnish water to certain premises until arrears for water rents standing against a prior owner were paid, are void for unreasonableness.

On final hearing on bill, answers, replication and proofs.

*Mr. Samuel A. Patterson,* for the complainants.

*Mr. Acton C. Hartshorne,* for the defendant.

EMERY, V. C.

The complainants are the lessees and the owners of a summer hotel at Avon-by-the-Sea, and the object of the bill is to restrain the defendant, a water company, from cutting off the water-supply to the hotel. Defendant claims the right to cut off the water because of the failure of a previous owner of the property (the grantor of the owners named in the bill) to pay the arrears

of water rent due for water furnished during the years 1897, 1899 and 1900. Injunction pending suit was ordered, the lessees paying the current water rent, and also entering into bond to pay the arrears (which had been established by judgment) if the bill was finally dismissed. The former owner, Mrs. Albertson, had filed a previous bill, in the year 1900, to restrain cutting off the supply for that year to her tenants (who were the present lessees), and alleged that the bill for arrears was disputed. On this bill an injunction *pendente lite* was also granted on the terms of paying the amount admitted to be due and of appearing at once in suit at law brought for the purpose of settling the amount due. Judgment in suit at law for the arrears, amounting to $643.23, was obtained in November, 1900, and Mrs. Albertson, failing to pay this amount, her injunction was dissolved on February 18th, 1901, and her bill finally dismissed in August, 1901. On April 9th, 1901, Mrs. Albertson conveyed the hotel property (along with other real estate) to the complainant Thompson, who took title, however, only as trustee, and as holding for the benefit of the building and loan association, complainant, who held the sixth and seventh mortgages on the property. These conveyances to Thompson were made to vest the beneficial title in the mortgagees without the expense of foreclosure, the title being taken by Thompson to prevent a merger. No consideration was paid for the conveyance, and in the answer it is claimed that the conveyances were fraudulent and made for the purpose of defeating defendant's claim, but at the hearing it was proved that the property was sold on foreclosure for less than the prior mortgages, and the charge of fraud was abandoned. The water company insist that the conveyances were made with notice of their claim for the arrears. I do not think actual notice to Thompson or his beneficiaries has been made out, and the suit brought by Mrs. Albertson, which was pending at the transfer, was not of itself, and in the absence of any *lis pendens,* constructive notice of the defendant's claim against her on the property.

The plain issue in the whole case, therefore, so far as the owners are concerned, is whether the defendant has the right to turn off the water from the premises because of the failure of a

previous owner to pay the arrearages. Defendant is not a company organized under the Water Companies acts (*Gen. Stat. pp. 2199, 2203*), but is incorporated under the General Corporation laws, and by ordinance of the borough of Neptune City was granted the franchise of laying its pipes along and through the streets of the borough for the purpose of supplying the borough and its inhabitants with water. It is the sole source of public water-supply to the inhabitants of the borough, and complainants, considered merely as owners and occupiers of lands in the borough, are entitled to the benefit of this public service and to the enforcement by some court of their right to an actual supply, on paying for its use.

Defendant insists that a court of equity has no jurisdiction, and that the proper and only remedy is by *mandamus*. No decision granting a *mandamus* has, however, been cited, and this court has in several cases exercised the jurisdiction. *Dayton* v. *Quigley,* 29 *N. J. Eq.* (*2 Stew.*) 77 (*Chancellor Runyon, 1875*); *Cee* v. *Railway Company,* 30 *N. J. Eq.* (*3 Stew.*) 440 (*1879*). In neither of these cases does the question of the exercise of equitable jurisdiction appear to have been specially raised or considered, but in a later case—*Johnston* v. *Belmar,* 58 *N. J. Eq.* (*13 Dick.*) 354 (*1899*)—the point was considered and decided, and I concluded that a right of this character involved the reasonable and comfortable enjoyment of a home or residence for the owner and his tenants, and that the only effective method of protecting complainant's right in that case was by injunction. In *Johnson* v. *Atlantic City Water Co.,* 65 *N. J. Eq.* (*20 Dick.*) 129 (*1903*), Vice-Chancellor Reed, in a case heard on demurrer to a bill, held that equitable relief by way of injunction should not be extended to require the furnishing of gas by a gas company, because this could be compelled by *mandamus,* if the company were under a public duty to furnish it. This related, however, to the relief upon final decree, and it was expressly stated in his opinion that no facts were disclosed in the bill which made the relief by *mandamus* inadequate. Inasmuch as the previous cases exercising the jurisdiction to require a supply of water were not cited or referred to, it must be as-

sumed, I think, that it was not intended to overrule or disapprove the doctrine of the previous cases.

Cutting off the supply of water for domestic purposes is damage of that grievous nature which falls within the principle of the decisions of the court of chancery as to irreparable damage. *Hayward* v. *East London Water Works Co., L. R. 28 Ch. Div. 138; 54 L. J. Ch. 523, 527 (Justice Chitty, 1885)*. And before the Judicature acts, it was the constant practice of the chancery court, in England, to intervene by injunction in proper cases for the protection of the plaintiff, pending the trial of the legal right and until that right could be determined at law. *Hayward* v. *East London Water Works Co., L. R. 28 Ch. Div. 138; 54 L. J. Ch. 523, 527 (Justice Chitty, 1885)*. Ordinarily, this temporary protection is adequate for the enforcement of complainant's rights, but where the remedy at law is inadequate it may be necessary, for the full protection of all rights, that the court of chancery settle the disputed question, either of law or fact, as incident to such protection. In *Hart* v. *Leonard, 42 N. J. Eq. (15 Stew.) 416 (Court of Errors and Appeals, 1886)*, it was said that the protection of one's dwelling-house from wrongs which render its occupancy uncomfortable has always been recognized as an occasion for equitable jurisdiction relating to title to lands, and the cases cited (at *p. 420*) show that this protection is either temporary or final, as the circumstances of the case seem to require. In the present case relief by *mandamus* would have been ineffective, as the original complainants, the lessees, would not have been able, in the regular course of procedure, to obtain an adjudication on their right to relief until after the expiration of their lease. It is a case, therefore, where, for the further protection of both parties, the question of right, as incidental to the question of necessary temporary protection, should be disposed of on final hearing, and with this necessity in view the bond above referred to was required to be conditioned for the payment of the arrears, if the bill should be dismissed. This course was taken in *McEntee* v. *Kingston Water Co., 165 N. Y. 27, 32 (1900)*, where the amount of the bill for arrears was fairly disputed, and an injunction was granted against cutting off the supply, pending final hearing as

to the amount due. A dispute as to the amount due could not have been settled on proceedings for *mandamus,* and if fairly made would be a bar to such relief. *Mackin* v. *Portland Gas Co., 51 Cent. L. J. 130 (Oregon Supreme Court, 1900),* and cases cited in note. In such cases, equity will protect the supply pending settlement of dispute, either in a court of law or at final hearing. For these reasons, therefore, and for the additional reasons that the cases relied on in *Johnson* v. *Atlantic City Water Co.* to support the remedy by *mandamus,* related to rights of an entirely different character from that of the comfort or enjoyment of a home or residence, and that there has as yet been no decision of our courts of law allowing a *mandamus* in these cases, I think this decision should not be considered as controlling the present case on the question of the exercise of equitable jurisdiction, but that the complainants' case should be considered on its merits.

On the merits of the case my opinion is, that in the absence of any statute expressly authorizing it, or making the arrearages a lien on the lands, the water company has no right to cut off the supply to complainants' premises unless and until the arrears due from a former owner are paid. Many charters or statutes providing for a water-supply by municipalities give this right expressly or create the lien, and in these cases subsequent purchasers acquire the land subject to the burden or penalty, and in the absence of circumstances creating special equities the legal right to enforce the penalty or to collect the debt from the land charged will not be interfered with.

The basis on which the right is rested in the present case is the right to make reasonable rules and regulations, under which authority two rules or regulations applicable to the case are claimed to have been adopted by the company. One is rule 16, that if water rents remain unpaid at the expiration of ten days from the time they are due the water may be stopped off the premises; and the other, rule 17, that where the water has been turned off for non-payment of water rent, it shall not be turned on again until the expense of turning off and on again of the water, together with the rent, are paid. The formal adoption of these rules and regulations by the company has not

been proved, and the evidence as to their existence, offered as binding on the consumers, is that since 1897 these rules, with others, have been printed on the bills for water regularly sent out. These bills seem to have been made out to the owners, and not to the lessees or occupants, and it is not shown that the present owner ever saw them or knew of the regulations. But assuming that the evidence of their formal adoption has been lost, or that the course of business of the company for several years is sufficient evidence of their adoption, or, putting the case on the right of the water company to impose reasonable conditions in any form as to the use of the water, I will, for the purposes of this case, consider the existence of the regulation or condition as sufficiently established. The question, then, is as to the reasonableness of a rule requiring the payment of arrearages due from a previous owner of the same property, as a condition of supplying the grantee or his tenants. This has not been expressly decided by any of our courts. In *Dayton* v. *Quigley, supra,* it was held that a regulation requiring an owner of premises to pay arrearages due from his tenant for water supplied to the tenant on other premises belonging to another landlord would be unreasonable, and in *Coe* v. *Railway Company, supra,* it was held that the refusal to furnish the receivers of a railway, operating it under orders of the court, with water for their locomotive engines, except on condition that the arrearages due from the insolvent corporation were paid, was an unreasonable condition, and the fact that the receivers were acting for the public was considered important. In the *Belmar Case,* no rules or regulations had been made imposing the condition (the compliance with plumbing regulations), and in the absence of anything showing any nuisance or danger to health, it was held that the condition was unreasonable. The question has, however, been examined in the courts of other states, and the conclusions in many of the cases rest on the right to lien or to cut off supply, expressly given by the statutory or other authority. These cases, many of which have been cited by defendant's counsel, give little assistance. In *Turner* v. *Revere Water Co., 171 Mass. 329 (1898),* water was cut off from a lessee because of the default of the owner for previous years,

and in pursuance of a regulation of the company, made, however, in the absence of any statutory authority, to cut off the water for non-payment or making the rates a lien. After a very full and careful examination of the authorities, both English and American, it was decided that in the absence of such statutory authority the regulation was unreasonable. It was considered as imposing a burden or penalty upon the transfer of lands and interests therein which should not be put upon a purchaser in the absence of statute.

These regulations of a company are not matters of public record, but are private transactions, ascertainable ultimately only from the company's records or books, which are also the source of information as to the amount of arrearages due or claimed to be due. As liens on the property of the consumer, the arrearages clearly have no standing in the purchaser's hands, nor should the transfers or contracts for transfer of real estate be embarrassed by the necessity of an inquiry as to liens, except such as are required by the statutes creating liens. And if the arrearages ·are not liens, and the property may, under the transfer acts, be conveyed without their burden, it is not reasonable, in my opinion, that the subsequent beneficial use of the property should be impaired in the purchaser's hands by conditions or penalties which require the performance of obligations resting on the former owner. The enforcement of such conditions or penalties against the purchaser amount substantially and practically to making the property, or its convenient use, subject to liens for the prior owner's debt, and in the absence of statutory authority the regulation or condition must be held to be unreasonable. The defendant will therefore be enjoined from cutting off the water-supply by reason of the non-payment of these arrears.