THOMAS J. SHANNON *vs.* SHEPARD MANUFACTURING COMPANY, INCORPORATED, & another.

Middlesex.   December 6, 1917. — May 24, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Receiver.   Bankruptcy.   Jurisdiction.   Attorney at Law,* Counsel fees.

Where at the time of the filing of a petition in bankruptcy the property of the bankrupt was in the hands of a receiver appointed by the Superior Court, that court has jurisdiction to settle the accounts of its receiver relating to his charge of the property up to the time of the adjudication in bankruptcy some months after the filing of the petition.

Upon a petition to the Superior Court, alleging that the debts of a certain corporation carrying on an established manufacturing business were not being paid although its assets were sufficient for that purpose and containing no allegation of insolvency, that court appointed a receiver to conserve the assets and conduct the business of the corporation.   About a month later a petition in bankruptcy was filed in a federal court against the corporation.   About five months after that the corporation was adjudicated a bankrupt and a trustee in bankruptcy was appointed.   Thereupon the receiver appointed by the Superior Court, who up to that time had operated the business of the corporation with the knowledge and consent of all persons interested, turned over to the trustee in bankruptcy all the assets of the bankrupt in his hands, excepting cash and bills receivable due to the receiver and such other assets as by agreement between the trustee and the receiver could be handled and turned into cash more advantageously by the receiver.   A decree of the Superior Court was made recognizing and confirming this arrangement and this decree was assented to expressly by the trustee.   Another decree of the Superior Court reciting these facts and by reason of them reducing the bond of the receiver also was assented to by the trustee.   Upon a petition in the Superior Court for the allowance of the final account of the receiver, the trustee in bankruptcy appeared by counsel and the only objection raised was in regard to the amount charged by the receiver for his services. A decree was entered, entitled a final decree, settling the receiver's accounts,

approving the payments made by him both before and after the filing of the petition in bankruptcy but before the appointment of the trustee in bankruptcy, approving bills for services of counsel rendered to the receiver and ordering them paid, determining the amount of the receiver's compensation, fixing the amount to be paid to the surety on his official bond and directing him to transfer and deliver to the trustee all property of the bankrupt remaining in his hands after making these payments. The trustee in bankruptcy appealed from this decree on the ground that the allowance of the sums to be paid as compensation to the receiver and his attorneys was beyond the jurisdiction of the court. *Held*, that the Superior Court, which rightly appointed the receiver, had jurisdiction of all questions relating to his accounting and final discharge, including the fixing of the amounts of compensation for him and his attorneys.

In the case above described, in which the evidence was not reported, it was *held* that, in the absence of any evidence, the charges for compensation could not be pronounced to be excessive and that the finding of the Superior Court on that question of fact could not be set aside.

In fixing the amount to be allowed to the receiver for expenses incurred for counsel fees it was *held* to have been proper to allow the amount of compensation paid to counsel for services rendered for the common benefit of the persons interested in bringing the original bill in equity upon which the receiver was appointed.

APPEAL, by the trustee in bankruptcy of the estate of the Shepard Manufacturing Company, Incorporated, a corporation, from a decree of the Superior Court dated July 20, 1916, allowing the account of Arthur F. Whalen, Esquire, as the receiver of the property of that corporation.

The appeal was heard by *Sisk*, J., who filed a finding of facts relating to the decree appealed from, which contained the facts that are stated in the opinion. The judge reported the case for determination by this court in the following report:

"In the above entitled case, by my direction, a decree entitled 'Final Decree' was entered on July 20, 1916. On January 23, 1917, Edward C. Mason, Esquire, as trustee in bankruptcy of said defendant corporation, filed a petition in said case entitled 'Petition for Order to Receiver,' in substance contending that this court was without jurisdiction to allow the account of Arthur F. Whalen, Esquire, its receiver in said case, and praying that said decree of July 20, 1916, entitled 'Final Decree' may be vacated; that said Whalen, the receiver in this court, be ordered to deliver to said petitioner, as trustee in bankruptcy of the defendant corporation, all the assets and property of said defendant corporation, and that said receiver be ordered to account in the United States District Court for the District of Massachusetts sitting in bankruptcy, to said petitioner, trustee as aforesaid, for all assets and

property of said defendant corporation on June 11, 1915, the day when a petition in bankruptcy was filed against said defendant corporation. This petition was duly heard by me, and was argued by counsel. No evidence was introduced by either party, and I thereupon caused to be entered an order denying the petition.

"I have this day filed a finding of all the material facts found by me in connection with said decree filed July 20, 1916.

"Inasmuch as it may be claimed that said decree entered July 20, 1916, was in fact an interlocutory decree, and being of the opinion that said decree so affects the merits of the contro-versy that the matters involved therein ought, before further proceedings, to be determined by the full court, I now report all questions arising under said decree under the provisions of R. L. c. 159, § 27, and under any other statutes authorizing me to re-serve and report the case."

*H. Williams, Jr.,* for the trustee in bankruptcy.

*J. T. Hughes,* (*P. Mansfield* with him,) for the receiver.

RUGG, C. J. The plaintiff, a stockholder in the defendant corporation, in behalf of himself and all other stockholders and creditors who might wish to join, filed against it in the Superior Court this suit in equity with appropriate allegations to the effect that under the management of its officers the debts of the cor-poration were not being paid although its assets were sufficient, and praying for the appointment of a receiver to carry on its business. There were no allegations of insolvency, but the contrary. On May 4, 1915, Arthur F. Whalen was appointed receiver to conserve the assets and to conduct the business of the corporation. He qualified, gave a large bond and took possession of the property. He operated the business of the corporation from May 4, 1915, until December 9, 1915, employing from thirty-five to seventy men. The business was that of a wholesale manu-facturer and jobber of silverware, and had been in existence about thirty years. For a considerable period it was the purpose and effort of the receiver, with the concurrence of all parties in interest, to put the business in such condition that it might be sold as a going concern. On June 11, 1915, a petition in bankruptcy was filed in the federal court against the corporation by some of its creditors. This petition was somewhat contested and the cor-poration was not adjudicated a bankrupt until November 24,

1915, when Edward C. Mason was appointed receiver in bankruptcy by the Federal court. On December 17, 1915, he was elected and qualified as trustee in bankruptcy. Whalen, as receiver, operated the business of the corporation with the knowledge and consent of Mason "during the period from November 24, 1915, to December 9, 1915, the date when the property of the bankrupt (except bills receivable and cash) was turned over to Mason as receiver. Pursuant to an oral agreement with Mason, Whalen, as receiver, continued to operate the business of the corporation for a period from December 9, 1915, until about the middle of January, 1916, when it was closed. Whalen made no charge for any services rendered by him during that period (December 9, 1915, to the middle of January, 1916)." On December 9, Whalen, as receiver of the Superior Court, surrendered to Mason, then receiver in the bankruptcy court, the business, plant, machinery, equipment and list of accounts receivable of the corporation, retaining his own accounts receivable as receiver, together with cash in hand, for the purpose of covering his disbursements, expenses and compensation. A decree of the Superior Court was entered on June 3, 1916, as of December 9, 1915, whereby said Whalen as receiver was authorized to deliver to said Mason, as receiver, or as trustee in bankruptcy, of the defendant corporation, "the real estate, machinery, merchandise, equipment and all the other assets of the defendant corporation in his hands and possession, excepting only cash, the bills receivable, due said Whalen as receiver, and such other assets, such as sample accounts, as by agreement between said Whalen and said Mason may be more conveniently handled or turned into cash by said Whalen." This decree was assented to by the attorney for Mason as trustee. On June 3, 1916, an interlocutory decree was entered as of May 1, 1916, which recited that Whalen, receiver, had turned over to Mason all of the assets of the defendant corporation in his possession, excepting certain cash and property now converted into cash, in all amounting to less than $9,000. It was thereupon ordered that the bond of Whalen as receiver be reduced from $100,000 to $10,000, with sureties. This decree was assented to by the attorney for Mason as trustee. On June 16, 1916, Whalen filed his petition for the allowance of his final account and report as receiver. An order of notice was

issued thereon to Mason, trustee in bankruptcy, returnable on June 19, 1916. Service of this order was accepted by the attorney for the trustee. At the hearing on this petition, the trustee appeared by his attorney and the only objection raised was to the amount claimed by the receiver for his services. A decree entitled "Final" was entered on July 20, 1916, settling the receiver's accounts, approving payments made by him both before and after the filing of the petition in bankruptcy, but before December 8, 1916, approving bills for services of counsel rendered to him as receiver during the period of his receivership, and ordering them paid, determining his own compensation for the period between May 4 and December 9, fixing the amount to be paid to the surety on his official bond, and directing him to transfer and deliver to the trustee all property of the bankrupt in his hands remaining after making these payments. On June 16, 1916, Whalen, as receiver, filed in the Superior Court a suggestion of the adjudication in bankruptcy and the appointment of Mason as trustee. So far as appears of record, this was the first time that the bankruptcy proceedings were called to the attention of the State court although the bankruptcy was recited in the decree entered on June 3, 1916. Mason did not file any appearance in the Superior Court, or ask to intervene or petition for transfer to him of the property in the hands of the receiver until August 9, 1916, when he filed a petition for leave to intervene. In that petition he set forth the filing of the petition in bankruptcy, the adjudication, and his appointment and qualification as trustee, the filing of the report of the receiver asking for the fixing of his compensation and for allowances to his attorneys, the entry of the decree of July 20, 1916, and prayed for leave to appeal from that decree on the ground that the allowance of the sums as compensation to the receiver and his attorneys was beyond the jurisdiction of the court. That petition does not appear from the record to have been allowed specifically, but since the trustee was permitted to appeal from the decree of July 20, it may be treated as having been allowed. On January 23, 1917, Mason as trustee filed in the Superior Court a petition entitled "Petition for Order to Receiver," which recited briefly the previous proceedings and alleged that the allowance of the account of Whalen as receiver was beyond the jurisdiction of the court and prayed that the

decree of July 20, 1916, be vacated, and that the receiver be ordered to account to the bankruptcy court for all assets and property of the corporation on June 11, 1915, the date of the filing of the petition in bankruptcy. No evidence was introduced on this petition and it was denied and the case was reported, if the decree of July 20, 1916, was not a final decree.

We are of opinion that that was a final decree. It was final at least to the extent of permitting an interested party to appeal from it. *Gerrish* v. *Black*, 109 Mass. 474, 477. *Forbes* v. *Tuckerman*, 115 Mass. 115, 119. *Hill* v. *Chicago & Evanston Railroad*, 140 U. S. 52. Opinion by Chief Justice Fuller in *Hoffman* v. *Knox*, 50 Fed. Rep. 484, at page 489. If it be a final decree, then the Superior Court had no right further to deal with it except upon a bill of review. *White* v. *Gove*, 183 Mass. 333, 340. *Lakin* v. *Lawrence*, 195 Mass. 27, 28. *Fairbanks* v. *Newhall*, 222 Mass. 598.

Nothing in the account appears to turn on the period elapsing between the date of adjudication of bankruptcy and of the actual turning over of assets by the receiver to the trustee. No argument has been made on that point and it is laid on one side.

It has not been contended that the services of Whalen as the receiver were not of value in preserving and managing the estate of the bankrupt. Indeed, the only suggestion made by the trustee at the hearing in the Superior Court was that the amount claimed for his services in that connection was too large, not that the receiver ought not to be paid.

The question presented for decision is whether the Superior Court had jurisdiction to enter the decree of July 20, allowing the accounts of the receiver, fixing his compensation and ordering payment of the fee for the surety upon his bond. Although this question was not raised at the time that decree was entered, it will be considered because it is the duty of the court to consider whether it has jurisdiction at whatever stage the objection may be presented, or of its own motion if not raised by a party. *Boston Bar Association* v. *Casey*, 227 Mass. 46, and cases collected at page 50.

The contention that the Superior Court was without jurisdiction to enter the decree of July 20, 1916, is founded on the proposition that the adjudication of bankruptcy made on November 24, 1915, related back to the time of filing the petition in bank-

ruptcy on June 11, 1915, and divested the receiver appointed by the Superior Court of all jurisdiction in the premises and drew into the jurisdiction of the bankruptcy court all matters pertaining to the administration of the property.

The appointment of the receiver was made lawfully by the Superior Court. It was not an act of bankruptcy as to the corporation, for the reason that there was no allegation of insolvency, but on the contrary the bill alleged that the assets were sufficient to pay the debts of the corporation. *In re William S. Butler & Co. Inc.* 125 C. C. A. 223; 207 Fed. Rep. 705. *Maplecroft Mills v. Childs,* 141 C. C. A. 245; 226 Fed. Rep. 415. The Superior Court is a court of general jurisdiction in law and in equity. The custody of all the property was rightly in the receiver when the petition in bankruptcy was filed. His entire conduct, at least before that time, was subject to the jurisdiction of the Superior Court. All this is indubitable and is conceded by the trustee.

Since the question here in issue depends upon the scope of an act of Congress and the jurisdiction of the District Court of the United States in bankruptcy, decisions of the Supreme Court of the United States are binding upon all other courts of the nation. It seems to us that the point now raised is concluded by the authority of such decisions. The case of *In re Watts,* 190 U. S. 1, involved a consideration of the rights and duties of the receiver of a State court respecting property of one subsequently adjudged a bankrupt. It was said at page 35, "It has been already assumed that the bankruptcy proceedings operated to suspend the further administration of the insolvent's estate in the State court, but it remained for the State court to transfer the assets, settle the accounts of its receiver and close its connection with the matter. Errors, if any, committed in so doing could be rectified in due course and in the designated way." This statement does not appear to be susceptible of any other meaning than that the State court has jurisdiction over such issues arising on the receiver's account as the amount of his compensation and the fees of his counsel. Jurisdiction implies authority to decide. *The Fair* v. *Kohler Die & Specialty Co.* 228 U. S. 22, 25. It was held, also, in *Louisville Trust Co.* v. *Comingor,* 184 U. S. 18, that the State court had jurisdiction to pass upon the fees of its receiver and his attorneys before the petition in bankruptcy was filed.

The inference seems irresistible that power of the State court "to settle the accounts of its receiver" involves of necessity the power to determine his compensation and all his other obligations assumed and expenses incurred, so far as is not inconsistent with the paramount title of the trustee and his general right of possession. The authority of the receiver, acting under the order of the local court, to make a sale of property in his custody because it was "of a perishable nature, and liable to be lost or diminished in value before the final adjudication of the case," was challenged in *Jones* v. *Springer,* 226 U. S. 148, on the ground that, although the sale was made on June 26 and confirmed by order of court on July 17, a petition in bankruptcy was filed on March 12 and the owner of the property was adjudged a bankrupt on April 23. In denying the soundness of the contention that jurisdiction was vested exclusively in the bankruptcy court, it was said at page 155, "It is true that the estate is regarded as *in custodia legis* from the date of the petition as against a subsequent attachment. *Acme Harvester Co.* v. *Beekman Lumber Co.* 222 U. S. 300, 306, 307. But in a case like the present where, under an attachment levied before the petition was filed, the property had been put into the hands of a receiver, without notice of the petition, it is not true that all power and jurisdiction of the local court were ended before notice of the bankruptcy proceedings. *Eyster* v. *Gaff,* 91 U. S. 521, 524, 525. *Scott* v. *Ellery,* 142 U. S. 381, 384. *Jaquith* v. *Rowley,* 188 U. S. 620, 626. *Revere Copper Co.* v. *Dimock,* 90 N. Y. 33. The jurisdiction of the territorial court not having been avoided and that court having the actual custody of the *res,* it had the power to preserve the subject matter of the controversy that necessarily is incident to such conditions."

It was said in *Mueller* v. *Nugent,* 184 U.S. 1, at page 14, "It is as true of the present law as it was of that of 1867, that the filing of the petition is a *caveat* to all the world, and in effect an attachment and injunction, *Bank* v. *Sherman,* 101 U. S. 403; and on adjudication, title to the bankrupt's property became vested in the trustee, §§ 70, 21*e*, with actual or constructive possession, and placed in the custody of the bankruptcy court." That statement of the general rule has been recognized as subject to some limitations. *Acme Harvester Co.* v. *Beekman Lumber Co.* 222 U. S. 300, 306. *Frank* v. *Vollkommer,* 205 U. S. 521, 529. *Hiscock* v. *Varick Bank*

of *New York*, 206 U. S. 28, 41. *Kelley* v. *Gill*, 245 U. S. 116, 120, 121. It has been held that that statement "was made in regard to the particular facts in that case." *York Manuf. Co.* v. *Cassell*, 201 U. S. 344 at page 353, and hence "not as applicable to all intents and purposes." *Jones* v. *Springer*, 226 U. S. 148, 155. It seems from those decisions that *Mueller* v. *Nugent*, 184 U. S. 1, does not operate to divest the Superior Court of jurisdiction under the circumstances here disclosed.

On the other hand, it is plain that upon the adjudication of bankruptcy and the appointment and qualification of a trustee, it became the duty of the Superior Court upon proper proceedings and in an orderly manner to see that the property of the bankrupt in the hands of its officers was transferred to the trustee appointed by the Federal court. But as was said by Mr. Justice Miller, in *Eyster* v. *Gaff*, 91 U. S. 521, 524, 525, "It is a mistake to suppose that the bankrupt law avoids of its own force all judicial proceedings in the State or other courts the instant one of the parties is adjudged a bankrupt. There is nothing in the act which sanctions such a proposition. The court in the case before us had acquired jurisdiction of the parties and of the subject matter of the suit. It was competent to administer full justice, and was proceeding, according to the law which governed such a suit, to do so. It could not take judicial notice of the proceedings in bankruptcy in another court, however seriously they might have affected the rights of parties to the suit already pending. It was the duty of that court to proceed to a decree as between the parties before it, until by some proper pleadings in the case it was informed of the changed relations of any of those parties to the subject matter of the suit. Having such jurisdiction, and performing its duty as the case stood in that court, we are at a loss to see how its decree can be treated as void." This statement, although used in a slightly different connection, appears peculiarly applicable to the case at bar. The Superior Court had jurisdiction of the *res*, and was proceeding in the exercise of that jurisdiction. That jurisdiction was recognized by the trustee in bankruptcy. Without any proper pleadings the receiver turned over to the trustee within a few days after the adjudication all the assets of the bankrupt in his hands, excepting only cash, the bills receivable due to the receiver, and such other assets as by agreement between the trustee and the

receiver could be more advantageously handled and turned into cash by the latter. A decree of the Superior Court recognizing and confirming this arrangement was entered about six months after it had been made in fact. This decree was assented to in terms by the trustee. Another decree of the Superior Court reciting these facts as a reason for reducing the bond of the receiver also was assented to by the trustee. Under these conditions it would be harsh and inequitable to say that the Superior Court had no jurisdiction except of its own motion and without any petition to order turned over to the trustee all property in the hands of its receiver and remand the latter to the bankruptcy court for the adjustment of all his acts performed under the direction of the Superior Court.

The weight of authority appears to support the view that it is within the power of the State court under such circumstances as are here presented to determine the fees of its receiver and his necessary expenses. It has been so adjudged expressly in *Kennedy* v. *American Tanning Co.* 1 Buch. 109, *Singer* v. *National Bedstead Manuf. Co.* 20 Dick. 290, *Mauran* v. *Crown Carpet Lining Co.* 23 R. I. 344, *Wilson* v. *Parr,* 115 Ga. 629, 634, *Loveless* v. *Southern Grocer Co. Ltd.* 86 C. C. A. 395; 159 Fed. Rep. 415, *First National Bank of Quincy* v. *Zangwill,* 61 Fla. 596, 597, *McGahee* v. *Cruickshank,* 133 Ga. 649, 651, *Hanson* v. *Stephens,* 116 Ga. 722, 726. See *State* v. *German Exchange Bank,* 114 Wis. 436, and *Hume* v. *Myers,* 155 C. C. A. 415, 418; 242 Fed. Rep. 827, 830. The case of *Bank of Andrews* v. *Gudger,* 128 C. C. A. 245; 212 Fed. Rep. 49, relied on by the trustee, is quite distinguishable, for there the receiver acting under instructions of the State court refused to turn over the property to the trustee in bankruptcy. *Graham Manuf. Co.* v. *Davy-Pocahontas Coal Co.* 151 C. C. A. 424; 238 Fed. Rep. 488, in the point decided does not go beyond this. The case of *In re Neuburger, Inc.* 153 C. C. A. 633; 240 Fed. Rep. 947, related to a voluntary assignment of such nature as itself to constitute an act of bankruptcy, and the assignee accounted to the State court but does not appear to have owed his appointment to the State court. In *In re Sage,* 149 C. C. A. 640, 649; 236 Fed. Rep. 644, 653, the appointment of the receiver was made by the State court after the adjudication of bankruptcy. In *Randolph* v. *Scruggs,* 190 U. S. 533, the property of the bankrupt was in the hands of

a voluntary assignee and not of a receiver appointed by a court of competent jurisdiction. That case was similar to *White* v. *Hill,* 148 Mass. 396, and *Clark* v. *Sawyer,* 151 Mass. 64.

The trustee relies upon statements in some decisions by district judges that the compensation of a receiver appointed by a State court must be determined by the bankruptcy court. *In re Rogers,* 116 Fed. Rep. 435. *In re Rogers & Stefani,* 156 Fed. Rep. 267. *In re Standard Fuller's Earth Co.* 186 Fed. Rep. 578. *In re Weedman Store Co.* 199 Fed. Rep. 948. *In re Williams,* 240 Fed. Rep. 788. To the same effect is *Whitla & Nelson* v. *Boyd,* 130 C. C. A. 167; 213 Fed. Rep. 587. Without pausing to examine these cases in detail, we are of opinion that, if they are applicable to such circumstances as are here disclosed, they ought not to be followed.

If the question is considered apart from authority, it seems to us that the same conclusion must be reached. The Federal and State courts, in a sense established by different sovereignties, exercise a concurrent territorial jurisdiction. It is of great importance that conflict of jurisdiction between these courts be avoided so far as possible. When the property of the corporation was taken by the receiver, it passed into the custody of the law. Its administration was wholly under the direction of a court of competent jurisdiction. The property in the case at bar being an established manufacturing business, it well might be necessary for its preservation that it be continued in operation and thus considerable expenses incurred and revenues collected. Between the date of the filing of the petition in bankruptcy and the adjudication and appointment of a bankruptcy receiver or trustee, it was necessary that the receiver of the Superior Court should continue his custody of the property and management of the business. He could only do this under the direction of the Superior Court. His conduct upon all matters of consequence in the administration of the estate of the corporation must be under the immediate supervision of the Superior Court and must be authorized by its decrees. A receiver is sometimes appropriately termed the arm of the court. The difficulties which a receiver encounters, the magnitude of his task, the degree of skill required and the value of the business sagacity actually exercised, must be better known to the court appointing and supervising him than to any other court examining the subject after the events.

It would seem that the jurisdiction which rightly makes the appointment of a receiver ought to determine all the questions as to his accounting and his final discharge. The Superior Court manifestly would have been bound immediately after the fact of bankruptcy had been called to its attention by appropriate pleading to order the transfer of the property of the bankrupt to the trustee, reserving only enough to pay expenses of its receiver. In fact the receiver without formal proceedings turned the assets in his hands over to the trustee directly after his appointment except such property as could be more profitably handled by himself. This was later authorized by decree. The trustee in bankruptcy did not become a party to any proceeding in the Superior Court until after the final decree was entered and all property except the amount required for the receiver's expenses had been ordered turned over to him.

Some degree of comity would seem to be due between courts exercising the kind of jurisdiction distributed under our dual system of government between the several States and the central national power. Failure to recognize the power of the court, acting within its jurisdiction in appointing a subordinate officer and directing him to perform valuable service respecting property in the custody of the court, to fix his compensation and see that he receives the sum so decreed out of money in its hands, is inconsistent with any degree of comity. It hardly appears to accord to a court exercising a concurrent jurisdiction the respect due to its character, to hold its officer, acting strictly within his duty and under its jurisdictional direction in the preservation and management of property, responsible and accountable also to another court as to the same matters. It seems to us that such a meaning ought not to be attributed to an act of Congress without words indicating that intent beyond all doubt. We fail to discover any such purpose governing the case at bar.

The contention is made by the trustee that the fees allowed to the receiver were too large. While there seems to be some force in this suggestion, the charges cannot be pronounced excessive in the absence of any evidence. It may be that the services rendered were of unusual character or of peculiar value. But the evidence is not reported. In the absence of a report of evidence under the

familiar rule, the finding of the Superior Court upon that question of fact cannot be set aside.

The same rule must govern as to the fees allowed to counsel. Apparently in one of the bills of attorneys consideration was given to services rendered in bringing the original bill in equity upon which the receiver was appointed. The amount apportioned to this element is not disclosed. Jurisdiction to make allowances of this kind in proceedings, such as this was, for the common benefit of many persons interested in the preservation of property, has been recognized and exercised in numerous cases. *Davis* v. *Bay State League,* 158 Mass. 434; and cases collected. *Carlson* v. *Revere Beach County Fair & Musical Railway,* 227 Mass. 291. *Harrison* v. *Perea,* 168 U. S. 311, 325. This principle seems to be recognized in *Randolph* v. *Scruggs,* 190 U. S. 533, 538, 539.

> *Order denying trustee's petition for order to receiver affirmed.*
> *Final decree affirmed.*