NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1154

MARCO TAMMARO

vs.

STEPHANIE RAUSEO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After trying for years to block a subdivision development in her neighborhood, the defendant, Stephanie Rauseo, sent an e-mail message asking the superintendent of the Lynnfield Center Water District (water district) to stop the plaintiff developer, Marco Tammaro, from "further polluting our drinking water field," and complaining that the "junk" he "truck[ed] in leaks to our field" and that his silt fences were improperly installed.  In response, Tammaro brought this action for defamation in the Superior Court.  Rauseo moved to dismiss Tammaro's claim under the anti-SLAPP statute, G. L. c. 231,

§ 59H (1996)[1], but the judge denied the motion.  After a trial, a jury returned a verdict in favor of Tammaro.  Rauseo appealed from the judgment, including the denial of her anti-SLAPP special motion to dismiss.  Exercising de novo review of that denial, we conclude that, in opposing the special motion, Tammaro did not show that Rauseo's petitioning activity was devoid of any reasonable factual support or any arguable basis in law.  See G. L. c. 231, § 59H; Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 557-562 (2024) (Bristol Asphalt).  Because Rauseo's special motion should have been allowed, we reverse the judgment in Tammaro's favor and direct that a judgment be entered dismissing the action.

Background.  Since 2015, Tammaro has sought to develop a two-house subdivision called Violet Circle on a property he owns in the Apple Hill neighborhood of Lynnfield.  In 2017, Rauseo, as the representative of the Apple Hill Neighbors Group (neighbors group), filed an appeal challenging a superseding order of conditions issued by the Department of Environmental Protection (DEP) for the subdivision, approving the plaintiff's development, pursuant to the Wetlands Protection Act, G. L. c. 131, § 40, and its supporting regulations.  After the DEP's

_____

[1] The statute was amended on July 29, 2022.  The amendment does not impact our analysis.  Unless otherwise noted, references to § 59H are to the version as amended through St.1996, c. 450, § 245.

2

Office of Appeals and Dispute Resolution concluded that the neighbors group's claims were ambiguous and unsupported by expert testimony, the DEP commissioner adopted its recommendation and dismissed the appeal, thus allowing Tammaro to begin construction on the lots.

In 2017, Rauseo and the neighbors group filed suit in Federal District Court against Tammaro and Federal defendants. They claimed that Tammaro violated Federal environmental laws by filling his property with pollutants and the DEP and the Army Corps of Engineers failed to investigate and sanction Tammaro's noncompliance with Federal laws. The Federal judge dismissed the neighbors group from the lawsuit because it failed to identify its members, dismissed Rauseo's claims against the Federal defendants, and dismissed her Federal Safe Drinking Water Act, 42 U.S.C. § 300f et seq., and "improper ex parte communications" claims against Tammaro. The Federal judge did not dismiss Rauseo's claims against Tammaro under the Federal Clean Water Act, 33 U.S.C. § 1251 et seq. Tammaro moved for summary judgment on those claims, arguing in part that Rauseo lacked standing to sue because there were no Federal waters located on Tammaro's property and, even if there were, the property was not the cause of any alleged pollution. The Federal judge allowed Tammaro's motion without specifying the basis for the grant of summary judgment.

3

In July 2020, one month after final judgment entered in Federal court, Rauseo received an e-mail message from a member of the neighbors group claiming that "at least 5 large dump trucks" had dumped "something at [Tammaro]'s land today." Rauseo forwarded this e-mail message to the water district superintendent, John Scenna, and his wife. Rauseo's e-mail message stated, in full, "I'm [forwarding] this to you because maybe John can stop Tammaro from further polluting our drinking water field. This junk he's trucking in leaks to our field. His [silt] fences are improperly installed."[2] In an e-mail message, the superintendent thanked Rauseo "for sharing this information" and wrote that the town engineer and planning director, whom he copied on his response, would be "able to better address the possible concern of illegal dumping at the Violet Circle Development."

After obtaining a copy of the e-mail message through a public records request, Tammaro stopped construction on the subdivision and, three months after the e-mail message was sent, filed the underlying action. He alleged that the statements in Rauseo's e-mail message were defamatory, caused him "to suffer emotional distress[,] and . . . damaged his reputation in the

_____

[2] Rauseo's e-mail message had two typographical errors: "forewarning" instead of "forwarding," and "silk" instead of "silt." There is no dispute as to her intended meaning.

4

eyes of the Lynnfield community."  In her answer, Rauseo denied that her statements were false and asserted that they were protected petitioning activity under the First Amendment to the United States Constitution.  She also filed a special motion to dismiss pursuant to the anti-SLAPP statute, asserting that Tammaro's defamation claim was "expressly predicated upon a communication to a government official petitioning for official action."  The judge denied the special motion, ruling that even though Rauseo "presented enough evidence to raise a presumption that the statute applies," Tammaro established by a preponderance of the evidence that Rauseo's conduct "lacked any reasonable factual support or any arguable basis in law" and that her conduct "caused actual injury."  Following a three-day trial, the jury returned a verdict in favor of Tammaro and awarded him damages in the amounts of $75,000 for economic loss and $50,000 for pain and suffering.  The judge denied Rauseo's motion for judgment notwithstanding the verdict, a new trial, and remittitur.

Discussion.  On appeal, Rauseo challenges the judgment on several trial grounds, including the judge's decision not to treat Tammaro as a limited purpose public figure, the instruction to the jury on Rauseo's right to petition, and the evidentiary basis for the award of damages.  Because we agree with Rauseo's additional argument that the judge should have

dismissed Tammaro's defamation claim under the anti-SLAPP statute, we do not reach those trial issues.

1. <u>Postjudgment review of denial of anti-SLAPP special motion to dismiss</u>. We first address whether Rauseo's challenge to the judge's denial of her special motion to dismiss under the anti-SLAPP statute is properly before us. The anti-SLAPP statute does not specify when the denial of a special motion may be appealed. Contrast G. L. c. 184, § 15 (<u>d</u>) (prescribing thirty-day appeal period for denial of special motion to dismiss and other interlocutory orders under <u>lis</u> <u>pendens</u> statute). Applying the general rule that there is no right to appeal from an interlocutory order unless a statute or rule authorizes it, see <u>Ashford</u> v. <u>Massachusetts Bay Transp. Auth</u>., 421 Mass. 563, 565 (1995), this court initially did not recognize a right to interlocutory appeal from the denial of an anti-SLAPP special motion. <u>Kalogianis</u> v. <u>Leone</u>, 50 Mass. App. Ct. 910, 910-911 (2000), overruled by <u>Fabre</u> v. <u>Walton</u>, 436 Mass. 517, 522 n.7, <u>S.C</u>., 441 Mass. 9 (2004). Cf. <u>Duracraft Corp</u>. v. <u>Holmes Prods. Corp</u>., 427 Mass. 156, 159 (1998) (reviewing denial of anti-SLAPP motion to dismiss after petitioners granted leave to appeal). In <u>Fabre</u> v. <u>Walton</u>, the Supreme Judicial Court recognized that right, reasoning that the protections of the anti-SLAPP statute "are similar in purpose to the protections afforded public officials by the doctrine of governmental immunity" and that

6

interlocutory orders denying claims of governmental immunity can be appealed under the doctrine of present execution because "[t]he entitlement is an immunity from suit rather than a mere defense to liability."  Fabre, supra at 521-522 & n.7, citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The availability of an immediate appeal from the denial of an anti-SLAPP special motion to dismiss, however, does not preclude the proponent from instead challenging the denial after final judgment.  While some jurisdictions follow a "one shot" rule whereby a party forfeits its right to appellate review of an order after final judgment if it fails to take an earlier interlocutory appeal, see, e.g., In re Baycol Cases I & II, 248 P.3d 681, 687 n.8 (Cal. 2011), citing Cal. Civ. Proc. Code § 906, in Massachusetts "a party need not claim an appeal from an interlocutory order to preserve the party's right to have such order reviewed upon appeal from the final judgment."  Mass. R. A. P. 3 (a) (2), as appearing in 481 Mass. 1603 (2019).  In Aiello v. Aiello, 447 Mass. 388, 397-399 (2006), the Supreme Judicial Court applied this rule in declining to dismiss a postjudgment appeal challenging certain interlocutory receivership orders even though the appellant could have appealed from them immediately after they were entered.  The court noted that nothing in its earlier decisions allowing such interlocutory appeals suggested that "the failure to appeal from

7

such an order forfeits a party's right later to appeal from the order after final judgment has entered."  Id. at 397-398, discussing Shannon v. Shepard Mfg. Co., 230 Mass. 224, 229 (1918).  There is similarly no suggestion in Fabre or the anti-SLAPP statute itself that a failure to appeal immediately from the denial of a special motion forfeits a petitioner's right to challenge the order in an appeal from final judgment.

In light of Mass. R. A. P. 3 (a) (2) and the remedial purpose of the anti-SLAPP statute, we conclude that the proponent of a special motion to dismiss who forgoes an interlocutory appeal from its denial retains the right to have such order reviewed on appeal from final judgment.  The statute shields petitioners from liability, not just the burden of litigation.  Cf. Bresler v. Muster, 496 Mass. 111, 122 (2025) (common-law immunity protects public employees "from both suit and liability").  While a party that waits to challenge the denial of a special motion after final judgment loses some of the procedural protections afforded by the statute, see Fabre, 436 Mass. at 520-521, the primary purpose of the statute is "to immunize parties from claims 'based on' their petitioning activities."  Duracraft Corp., 427 Mass. at 167.  It provides for the "presumptive entitlement to dismissal" of claims under a "very favorable statutory standard."  Bristol Asphalt, 493 Mass. at 555.  Moreover, its protection is not limited to the

8

beginning of cases, but rather extends to special motions filed "at any later time upon terms [the court] deems proper."  G. L. c. 231, § 59H.

Allowing a petitioner to assert her rights under the anti-SLAPP statute after final judgment is consistent with the right of public officials to assert governmental immunity defenses in that same posture.  See, e.g., Littles v. Commissioner of Correction, 444 Mass. 871, 876-880 (2005), citing Fisichelli v. Town of Methuen, 884 F.2d 17, 19 (1st Cir. 1989) (defendants who failed to pursue timely interlocutory appeal on qualified immunity could raise issue on appeal after trial).  A contrary "use it or lose it" approach has no basis in the statutory text and would lead to unnecessary interlocutory appeals on issues that might become moot if the proponent of the special motion to dismiss prevails at trial.  Here, for example, Rauseo may well have believed that she was likely to win at summary judgment or trial and that continuing with the litigation in Superior Court was her most efficient path to relief.  Whatever the strategic reason may be, the anti-SLAPP statute gives petitioners options to minimize the burden of the resulting litigation, rather than mandate that they follow only one litigation strategy.[3]

---

[3] The denial of an anti-SLAPP special motion to dismiss is unlike temporary or preliminary interlocutory orders that cannot be challenged after final judgment.  For example, courts do not generally review the denial of motions for summary judgment

9

2.  Rauseo's anti-SLAPP motion.  After the denial of the motion in this case, in Bristol Asphalt, the Supreme Judicial Court revised the framework used to assess special motions to dismiss under G. L. c. 231, § 59H.  See Bristol Asphalt, 493 Mass. at 554-560.  As the court explained in a companion case, this framework applies to all cases in which an anti-SLAPP motion or appeal remained pending as of the issuance of the rescript in Bristol Asphalt, as the case here.  See Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 578 (2024).  A party may file an anti-SLAPP special motion to dismiss if "the

---

after trial because "[t]he merits of a claim are better tested on appeal on the record as it exists after an evidentiary trial than on the record in existence at the time the motion for summary judgment was denied."  Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 126 (1986).  Similarly, courts will not review a preliminary injunction that has been mooted by entry of a final judgment and "has no effect upon present rights."  Lowell Bar Ass'n v. Loeb, 315 Mass. 176, 190-191 (1943).  Unlike such interlocutory orders, the denial of an anti-SLAPP special motion presents a question of law that is "separate from the merits of the underlying action."  477 Harrison Ave., LLC v. Jace Boston, LLC, 477 Mass. 162, 176 n.15 (2017), S.C., 483 Mass. 514 (2019), citing Mitchell, 472 U.S. at 528-529.  That is because the statute focuses on "the legitimacy of the prior petitioning activity by the party filing the special motion to dismiss," not "the elements of the claims that the party is seeking to have dismissed."  Bristol Asphalt, 493 Mass at 547 n.13.  In addition, special motions are decided based on the parties' pleadings, competing affidavits, and any "specified discovery" allowed for "good cause shown," not on evidence introduced at trial.  G. L. c. 231, § 59H, first and third pars.  See Bristol Asphalt, supra at 557-558; Hidalgo v. Watch City Constr. Corp. 105 Mass. App. Ct. 148, 153 & n.5 (2024), citing Benoit v. Frederickson, 454 Mass. 148, 156 (2009) (Cordy, J., concurring).

10

civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth." G. L. c. 231, § 59H. At the first stage of the analysis, the proponent of the special motion to dismiss "must show that the challenged count has no substantial basis in conduct other than or in addition to the special motion proponent's alleged petitioning activity." Bristol Asphalt, supra at 555-556. If the proponent makes this showing, "the burden shifts to the special motion opponent." Columbia Plaza Assocs., supra at 577, citing G. L. c. 231, § 59H, first par. At that second stage, "the special motion opponent must show by a preponderance of the evidence that the special motion proponent's petitioning activity (1) was devoid of any reasonable factual support or any arguable legal basis; and (2) caused the special motion opponent actual injury." Columbia Plaza Assocs., supra. "If the special motion opponent makes both showings, the special motion is denied. Otherwise, the special motion is allowed." Id. See Bristol Asphalt, supra at 555-560.

a. Rauseo's e-mail message was protected petitioning activity. Applying the revised framework here, we agree with the judge that Rauseo made the requisite threshold showing that Tammaro's claim for defamation was based on her petitioning

activity.  See Bristol Asphalt, 493 Mass. at 555-556.  As discussed, petitioning is broadly defined under the anti-SLAPP statute, see id. at 549-550, and includes "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding" and "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding."  G. L. c. 231, § 59H, sixth par.

As Tammaro stated in his complaint and reiterated in his opposition to the special motion to dismiss, he based his defamation claim on three statements in Rauseo's 2020 e-mail message to the water district superintendent:  i.e., (1) "maybe [the water district superintendent] can stop Tammaro from further polluting our drinking water"; (2) "[t]his junk he's trucking in leaks to our field"; and (3) "[h]is [silt] fences are improperly installed."  See Bristol Asphalt, 493 Mass. at 561 (at first stage of framework, court conducts "a facial review of a special motion opponent's pleading to identify which factual allegations serve as the basis for a particular claim").  The water district is a regulated municipal entity whose commissioners are elected by voters who reside within its geographic bounds.  See St. 1939, c. 336, §§ 1, 9, 11.  In support of her special motion, Rauseo submitted evidence showing

12

that, for many years, the water district had assessed and taken measures to address the impact of polluted runoff water and contamination from hazardous materials on the town's drinking water supply, including at a brook adjacent to Tammaro's property.

Because Rauseo's e-mail message raised concerns about perceived threats to the local water supply to a public official charged with managing it, the e-mail message qualifies as petitioning under the anti-SLAPP statute. See Columbia Plaza Assocs., 493 Mass. at 580 (submission of written statement to government agency constitutes petitioning); North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 863 (2009) ("The right to petition a governmental body for redress of a grievance is the very essence of petitioning activity"). That Rauseo sent her e-mail message to the superintendent's private, not work, e-mail address is immaterial. See North Am. Expositions Co. Ltd Partnership, supra at 862, quoting Global NAPS, Inc. v. Verizon New England, Inc. 63 Mass. App. Ct. 600, 605 (2005) ("Petitioning includes all 'statements made to influence, inform, or at the very least, reach governmental bodies -- either directly or indirectly'"). In addition, it is undisputed that Tammaro's claim had "no substantial basis in conduct other than or in addition to [Rauseo's] alleged

13

petitioning activity."  See Bristol Asphalt, 493 Mass. at 555-556.

b.  Tammaro did not show that Rauseo's e-mail message was devoid of any reasonable factual support or arguable basis in law.  Because Rauseo met her burden under the first stage of the anti-SLAPP framework, the burden shifted to Tammaro to show, by a preponderance of the evidence, that Rauseo's e-mail message was "devoid" of "any reasonable factual support or any arguable basis in law."  Bristol Asphalt, 493 Mass. at 557-558 & n.18.[4] As the Supreme Judicial Court has noted, this is "a difficult task" that essentially requires the opponent of the special motion to dismiss to "prove a negative."  Id. at 555, 557.  The task that Tammaro faced was even more difficult, since no basis in law is generally required for an individual to send an e-mail message to a local official.

Tammaro argues that "[n]o reasonable person could think" that Rauseo's petitioning activity "had a reasonable basis in law or fact."  This argument founders at the outset because, in his opposition to Rauseo's special motion to dismiss, Tammaro made no effort to disprove one of the three statements on which his defamation claim was based:  the allegation that the silt

---

[4] Because Tammaro did not satisfy this second-stage requirement, we do not consider whether he showed that Rauseo's petitioning activity "caused actual injury" to him.  G. L. c. 231, § 59H.  See Bristol Asphalt, 493 Mass. at 557-558.

14

fences on his property were improperly installed.  In support of her special motion, Rauseo stated in an affidavit that she saw and took photographs showing that Tammaro's silt fences were not buried deep enough to prevent topsoil from being carried away by stormwater runoff.  Yet while Tammaro alleged that this statement was "false and malicious," he made no such showing of falsity but rather only alleged that no agency had issued a citation due to the fences.  See Hidalgo v. Watch City Constr. Corp., 105 Mass. App. Ct. 148, 152-153 (2024) (reversing denial of anti-SLAPP motion where opponent presented "no evidence at all" that petitioning activity lacked objectively reasonable factual basis).  Nor did Tammaro request discovery as to the basis for Rauseo's statement.  See id. at 153 n.5.

Tammaro also failed to show that the other statements in Rauseo's e-mail message -- involving Tammaro "further polluting our drinking water" and the "junk he's trucking" leaking "to our field" -- were devoid of any reasonable factual support.[5]

_____

[5] Because Tammaro did not show that any of the three allegedly defamatory statements in Rauseo's e-mail was devoid of any reasonable factual support or arguable basis in law, we need not resolve whether an opponent can defeat an anti-SLAPP special motion to dismiss if it shows that some but not all of the petitioning activity on which its claim is based meets that standard.  See Bristol Asphalt, 493 Mass. at 557-558 & n.18 (noting that, at second stage of revised framework, "the mere existence of an isolated 'untrue' or 'misleading' statement would not, in and of itself, mean that the petitioning activity was devoid of any reasonable factual support or arguable basis in law").

15

Although Rauseo asserted in her answer that the statements "were opinion, not fact, and thus not actionable," we assume without deciding that they implied an actionable statement of fact that whatever Rauseo's neighbor saw being dumped on Tammaro's property in July 2020 was likely to pollute or otherwise threaten the area's water. See King v. Globe Newspaper Co., 400 Mass. 705, 713 (1987). In support of her special motion to dismiss, Rauseo presented evidence regarding the pollution of the local water supply, including studies reporting pollution in the brook adjacent to Tammaro's property and describing development in that area as "a major concern." While Rauseo did not present evidence specifically addressing the contents of the dump trucks seen by her neighbor in 2020, neither did Tammaro in his opposition. Rather, he attached an expert report, submitted in the Federal litigation and served on Rauseo, that analyzed soil collected from his property between 2015 and 2017. Notwithstanding the divergence in dates, Tammaro contended that his report proved that the fill he trucked in, as well as the runoff water and the groundwater leaving his property, was clean and, following his "success in the [F]ederal litigation," Rauseo "should have realized that Tammaro had proven definitively and presumably for the final time that Rauseo's claim[s] were untrue."

16

In fact, no such definitive conclusion was reached in that case. The Federal judge dismissed Rauseo's Safe Drinking Water Act claim for lack of standing but entered summary judgment dismissing her Clean Water Act claim without explaining the basis for his decision. It is thus entirely possible that the judge agreed with Tammaro's primary argument -- that there could be no Clean Water Act violation because there are no "waters of the United States" on Tammaro's property to pollute, see Rapanos v. United States, 547 U.S. 715, 739-742 (2006) -- without reaching Tammaro's secondary argument that the fill he brought to the property was clean.

We do not foreclose the possibility that a judicial declaration could so conclusively debunk an individual's complaint that she would lose the protections of the anti-SLAPP statute if she raised the complaint anew with a public official. But that did not happen here. In allowing summary judgment, the Federal judge did not expressly find that there was no basis to Rauseo's claims of pollution; thus, the parties' pleadings and competing affidavits in the present case did not establish that her statements were "flatly incorrect," Bristol Asphalt, 493 Mass. at 559, citing Maxwell v. AIG Dom. Claims, Inc., 72 Mass. App. Ct. 685, 696 (2008), and, as noted, Tammaro did not attempt

17

to disprove the other allegedly defamatory statement in Rauseo's e-mail message.

Conclusion.  Because Tammaro did not show that Rauseo's petitioning activity was devoid of any reasonable factual support or any arguable legal basis, Rauseo was shielded from liability for his defamation claim based on that activity.  We reverse the judgment in Tammaro's favor and direct that a judgment be entered dismissing the action.

So ordered.

By the Court (Desmond, Walsh & Toone, JJ.[6]),

Clerk

Entered:  July 28, 2025.

---

[6] The panelists are listed in order of seniority.

18