## ELIJAH C. DREW *vs.* WILLIAM A. BEARD.

The fact that a man is a partner under articles which define the nature of the business of the firm, provide that it shall be done in a certain place in his name, and do not prohibit him from dealings on his own account, raises no presumption that business of a different nature, done by him elsewhere in his name, is on the joint account.

Written articles of partnership "for the purpose of trade, especially for the sale of goods and merchandise " from certain northern seaports, where they are to be bought by one partner, at certain southern seaports, where they are to be sold by the other partner, which do not limit the time of either partner exclusively to the business of the firm, or prohibit either from business on his own account, do not include within their scope a purchase of metals by one of the partners at an auction in a town several hundred miles inland from the southern seaports, their transportation to the coast, shipment north, and sale in a northern port by a factor; or a transaction in relation to cotton, which consists of his making and performing a contract with the government, to collect and rebale a large quantity of cotton in an inland district, and transport it to the coast, receiving part of it for his compensation, and of his shipment of his part to the north and sale of it there by the factor, in like manner with the metals.

A bill in equity, to wind up a partnership of the parties under written articles, was referred to a master to state an account. His report, by including certain transactions, showed a balance due to the plaintiff; and also showed that, if they were erroneously included, a balance was due to the defendant. The defendant alleged exceptions, on the ground that the transactions were not within the scope of the written articles of partnership. At the close of the argument of the exceptions before the full court, between three and four years after the commencement of the suit, the plaintiff gave notice that he should move to amend his bill by adding allegations which would apply to the transactions, if the exceptions were sustained. The decision sustained the exceptions; and the plaintiff filed the motion. *Held,* that as, upon the facts, it was unreasonable to doubt that the plaintiff, when he filed the bill, intended that it should apply to the transactions in dispute, and the question whether it did so was one upon which counsel might honestly differ, the amendment should be allowed, although its effect was to introduce a substantially new cause of action; but upon terms that he should pay the defendant's costs to the time of the amendment, and take no costs himself to that time if he should finally prevail; and that, as the defendant alleged that he was taken by surprise, and compelled to meet the issue of those transactions without due preparation, at the hearing before the master, the case should be reopened for a new hearing thereon, at the defendant's election.

The report of a master in chancery on questions of fact referred to him, depending upon *conflicting evidence, is not conclusive, although every reasonable presumption is to be made in its favor; and if the evidence clearly shows that he is mistaken in his conclusions, the court will set them aside upon exceptions.*

BILL IN EQUITY filed November 5, 1866, for a settlement of business transacted under written articles of partnership dated and entered into by the plaintiff and the defendant at Port Royal in South Carolina on January 6, 1865, which provided that, "for· the purpose of trade, especially for the sale of goods and mer·

chandise from Boston and New York at Port Royal, S. C., Sa vannah, Ga., and Charleston, S. C.," it was mutually understood and agreed as follows : ·

" 1. The business to be done on joint account, for the mutual and equal benefit of the parties ; all profits or losses to be equally divided.

" 2. The capital to be furnished in equal amounts, and not to exceed $60,000 without further agreement by the parties.

" 3. The goods and merchandise to be bought and shipped from Boston and New York by the said Drew, and the business at that end to be managed mainly by him.

" 4. The sale of the goods, and the general management of the business at Port Royal, Savannah and Charleston, to be assumed by the said Beard.

" 5. No charge or commission is to be made by either party for personal services ; all help necessary to conduct the business, and all expenses required to carry on the business successfully, first to be paid from the profits, or divided as a loss.

" 6. It is now proposed by the parties to open a jobbing store at Port Royal to sell only by the package ; also to open a retail and jobbing store at Savannah.

" 7. Each party holds himself responsible to the other for the faithful performance of all business and all joint account moneys, goods and merchandise intrusted to or done by him.

" 8. This arrangement for a joint account business, to be done in the name of W. A. Beard at Port Royal, Savannah and Charleston, and of E. C. Drew at Boston, and is to continue only so long as is mutually agreeable, and may be terminated by either party by an offer to buy or sell out to the other party."

The bill alleged that " under and by virtue of these articles of copartnership the said business was commenced and carried on by the said parties, and the defendant had and exercised the chief management and control of the said business at Port Royal, Savannah and Charleston ; " that the plaintiff put a large amount of capital, to wit, $30,000, into the said business, and applied his best skill and judgment to it , that a large amount of profits, to wit, $60,000, were realized by the defendant in said business and

retained by him ; that " the said copartnership has terminated and been dissolved ; " and that the plaintiff requested the defendant to come to a settlement " touching the said business and dealings, and the sums received by the defendant," and the defendant neglected and refused to do so. The prayer was for an answer, and for " such further and other relief in the premises as the nature and circumstances of this case may require."

The defendant, in his answer, admitted the execution of the written articles of partnership, and that he had and exercised the chief management and control of whatever business was carried on under them at Port Royal, Savannah and Charleston ; alleged that he faithfully executed his duties under them ; denied that the plaintiff put $30,000 into the business, but alleged that the plaintiff bought invoices of goods and shipped them to the defendant and paid for them with the proceeds of remittances made to him by the defendant ; denied that the said business resulted in profit, and alleged that it resulted in a great loss, of many thousands of dollars, the precise amount of which he could not state until the plaintiff should account to him for goods which remained in the plaintiff's hands to be disposed of in settlement thereof, and for which the plaintiff neglected and refused to account ; denied that he ever refused or avoided coming to a just and full settlement with the plaintiff touching said business, and alleged that on the contrary he had always desired and been ready to come to such a settlement, but was prevented from doing so by the plaintiff's neglect and refusal to account as aforesaid ; denied that any amount was due from him to the plaintiff, and alleged that a large sum was due from the plaintiff to him ; and annexed an account alleged to be " an account of all his business and dealings with the plaintiff under the said articles of agreement, so far as it is possible for the same to be made by him while the plaintiff neglects and refuses to render to him an account as aforesaid."

The plaintiff filed a general replication ; and in December 1867 the case was referred to Charles C. Nutter, Esq., one of the masters in chancery for this county, " to state an account," who filed his report in October 1869, together with exceptions alleged

thereto by the defendant. By the report, and a statement of all the evidence, which was annexed to it, these facts appeared :

" The parties executed the written agreement alleged in the bill, and thereupon proceeded to carry on business according to the terms of said agreement, and opened two stores in Savannah about February 1, 1865, for the sale of goods and merchandise. Salesmen were employed, and the business was transacted by selling the merchandise which had arrived and was arriving from time to time, the plaintiff purchasing principally the goods at the North and shipping them to Savannah, where most of the sales were made, principally under the management and direction of the defendant, and where the business was conducted in his name, as provided by said articles of partnership ; and the said business continued until the last of November or first of December 1865, when the stores were closed." The evidence showed that the partnership was terminated by an offer made by the plaintiff to the defendant, pursuant to the eighth article of their agreement, at some time between the 10th and 19th of November ; and that the keys of the stores were surrendered to the landlord on November 30.

During several months of this period the plaintiff was personally at Savannah. The rest of the time he was in the North, chiefly at Boston, where he carried on business individually, or in Florida, where also he had individual business. The defendant was at Savannah during the whole period, with the exception of time consumed in three journeys to and from the North, and of portions of August and the three ensuing months, in which (as also in December, after the stores of the firm were closed) he was engaged in transactions at and near Thomasville in the southwestern part of Georgia, several hundred miles distant from Savannah by the route of communication then existing. The nature of these transactions was briefly as follows :

At a sale by auction, in Thomasville, by a United States treasury agent, of captured and abandoned property, under the treasury regulations relating to such property in the civil war, the defendant in August bought a quantity of old lead and iron and forwarded it thence to New York, consigned to the firm of

S. W. Lewis & Company, commission merchants, who sold it and accounted to the defendant for the proceeds.

The defendant also, on August 16, at Thomasville, entered into a contract with the treasury agent to collect, rebale and transport certain captured and abandoned cotton, of which on that day the treasury agent wrote, and they signed and sealed the following memorandum :

" This certifies that I have entered into an agreement with William A. Beard, of New Bedford, now doing business at Savannah, to collect, rebale when necessary, transport and deliver at Jacksonville, Florida, or at some eligible shipping port in Georgia, all cotton which has been turned over to me by the military commander, Colonel Kimball, or to which the United States government have claims, within the military district of Altamaha, said Beard agreeing to place said cotton at said shipping port or ports at the earliest practicable period, and for which he is to receive, in lieu of all expenses incurred, one quarter part of the bales of cotton collected, rebaled and transported. This to be in full of all demands. This division to be made at Thomasville, and under the direction of the supervising special agent, and, in his absence, of the military commandant or his deputy. And the said Beard further agrees to indemnify the United States government for all claims and damages which may accrue from any neglect on his part, or from any expense incurred in collecting, preparing and transporting said cotton."

Immediately after signing this memorandum the defendant began to collect the cotton, but was interrupted by a legal process sued out from the civil courts of Georgia by persons who made claim to a portion of the cotton, and he desisted, returned to Savannah, and gave the treasury agent notice that he would proceed no further in execution of the contract without the express approval of the secretary of the treasury, to whom the memorandum of it had meanwhile been forwarded for revision. On October 10 he received notice that the contract was approved by the secretary of the treasury, and was directed to carry it into immediate execution, and Savannah was designated as the shipping port at which he should deliver the cotton. He accordingly

went again to Thomasville on October 24, and during the months of November and December 1865 and the early part of January 1866 collected about 2000 bales of cotton in southwestern Georgia, pressed and rebaled it, transported it from Thomasville to the Altamaha River, down the river to the sea, and thence up the coast to Savannah, where he repaired the damages it had suffered in transportation, and put it into shipping order. Upon its acceptance in such order at Savannah by the treasury agent, who until then maintained control of the whole of it as security for faithful performance of the contract, the defendant's quarter of the cotton, which had been apportioned under supervision of the United States military authorities at Thomasville, was surrendered to him, less whatever number of bales out of the whole lot of cotton had been lost on the route. The cotton thus received by the defendant he consigned to S. W. Lewis & Company for sale, as he did the lead and iron, and they accounted to him in like manner for the proceeds. S. W. Lewis & Company had for many years before the defendant's partnership with the plaintiff been the defendant's agents in New York, and continued to be so during the partnership and after its dissolution; and they included their business done for the defendant individually, and that done for the partnership, in one and the same account in his name.

The defendant's pecuniary outlay and risk in this transaction were very great; an attempt was again made to arrest him on process of a Georgia court; and he was exposed to danger of life and limb, by acts of violence threatened or done by persons interested to prevent the collection and removal of the cotton, which led to arrests by the United States military authorities and the proclamation of martial law at Thomasville.

The defendant objected to the introduction of evidence by the plaintiff, before the master, of these transactions in lead and iron and cotton, as not warranted, under the order of reference to the master, by the plaintiff's bill and the written articles of partnership. But the master ruled that the transactions were " *primâ facie* partnership transactions and to be accounted for as such; " admitted the evidence; and required the defendant, on the plaintiff's motion, to produce forthwith his accounts thereof, and also

all his letters and papers "pertaining to the business," under penalty of not being afterwards permitted to introduce them, if he should refuse their production at that time and the plaintiff should proceed to prove them by other evidence.

The plaintiff accordingly produced his said accounts and letters and papers, showing a net profit in the iron and lead transaction of about $1500; and in the cotton transaction an expenditure of about $62,000 in collecting, rebaling and transporting the cotton, a loss on the route of transportation and consequent deduction from his share of cotton of only 12 out of the 2000 bales, and a profit of about $50,800. Various items of the expenditure, amounting to nearly $10,000 and consisting of the expenses of teaming, handling and rebaling cotton at Thomasville, and pay of the defendant's employees there, were disallowed by the master.

Excluding these transactions, the master found that the business of the partnership resulted in a loss of $33,990.27, of which the firm owed the plaintiff $8,068.44 and the defendant $25,921.83; and he reported as follows:

"Books were kept at the Savannah stores, of the business transacted there, which were produced before me at the hearing. They were kept, for the most part, by persons unacquainted with book-keeping, and in a very unskilful manner. They purport to contain only the business transactions at said stores, without any entries, as upon joint acccount, of the said transactions in iron, lead and cotton. Said books purport to contain the account of each partner with the firm.

"The business of buying and selling merchandise, as conducted and carried on in said stores at Savannah, resulted finally in a large loss. The said business of buying, shipping and selling said iron, lead and cotton, as so conducted and done by the defendant, resulted in a large profit. The plaintiff contends that the latter should be accounted for by the defendant, as part and parcel of the business of the copartnership, and that he is entitled to one half of the profits thereof, in general account; while the defendant claims that this was his own private, individual business transaction, in no way connected with the partnership business

and for which he is not liable to account. And this constitutes the main and principal matter in controversy in this suit."

" The plaintiff claims, as hereinbefore stated, that the said operations in lead, iron and cotton should be accounted for by the defendant as belonging to the partnership business. And I find upon the evidence that they should be so accounted for."

" And I accordingly find and report that the defendant was indebted to the plaintiff on March 1, 1869, the date of this report, in the sum of $24,297.26, as by an account stated in accordance with the foregoing findings and results, which is hereto annexed."

The defendant alleged three exceptions to the report; the first, in that " the master required the defendant to account for the profits made by him on his purchase of lead and iron of the government of the United States, as a part of the business of the partnership between the plaintiff and defendant, the defendant alleging that, upon the plaintiff's bill and the partnership agreement between the plaintiff and himself, said purchase ought not to have been held to be partnership business, and that the master erred in compelling him to account for the profits of said purchase, and in receiving evidence thereof; " the second, in like terms as to the master's rulings in respect to the cotton transaction ; and the third, in that, " upon the evidence and facts before the master, he should have found, adjudged and reported that the profits of the purchase of lead and iron, and of the contract with the treasury agent, were not profits of the business of said partnership."

The case was reserved upon the pleadings, master's report, and exceptions, for the determination of the full court, and was argued in March 1870. At the close of the argument, the plaintiff's counsel gave notice that in event of a decision adverse to him upon the first and second exceptions, they should move for leave to amend the bill.

*J. G. Abbott & A. G. Browne, Jr.,* ( *W. E. Parmenter* with them,) for the defendant.

*A. A. Ranney & J. P. Converse,* for the plaintiff.

MORTON, J. The bill in this case alleges, that the parties entered into copartnership by written articles of agreement; that

under and by virtue of said articles business was commenced and carried on by the parties; that a large amount of profits was made and realized in said business, which was received and retained by the defendant; that the copartnership has been dissolved; and that the defendant refuses to account with the plaintiff and to pay him the amount justly due and belonging to him.

Referring to the articles of agreement, we find that the partnership was established "for the purpose of trade, especially for the sale of goods and merchandise from Boston and New York at Port Royal, S. C., Savannah, Ga., and Charleston, S. C." They provide that goods and merchandise are to be bought and shipped from Boston and New York by the said Drew, and the business at that end to be managed mainly by him, and that the sale of the goods and the general management of the business at Port Royal, Savannah and Charleston is to be assumed by the said Beard. They contain no stipulation that each partner is to devote his whole time to the business of the firm, and no provision prohibiting either partner from entering into dealings or adventures on his own account.

It appeared, at the hearing before the master, that the parties, under their agreement, opened two stores in Savannah for the sale of goods and merchandise, and carried on business there for about ten months, when the stores were closed, and that the said business resulted in a loss. It also appeared that, during that period, the defendant entered into certain speculations or adventures in cotton, lead and iron, the details of which are set out in the master's report, from which he realized a large profit. The plaintiff claimed that the defendant should account to him for one half of the profits thus realized, and offered evidence in regard to said transactions in cotton, lead and iron, which the master, against the defendant's objection, admitted. The question now presented to us is, whether, upon his bill, as it is framed, the plaintiff can maintain this claim; and we are of opinion that he cannot.

The contract between the defendant and the United States treasury agent was clearly not within the scope of the partnership business. It was not a purchase of cotton, but a personal

contract to collect, rebale and forward to a shipping port, cotton in the interior of the state of Georgia, owned or claimed by the United States government, for doing which the defendant was to receive, as compensation, one quarter part of the cotton thus forwarded. The undertaking involved great personal and pecuniary risk. It is obvious that, if this adventure had resulted in a loss, the plaintiff would not have been liable to the United States government. Nor could the defendant charge him with one half of the loss, under and by virtue of the partnership articles. It was a separate and independent transaction, not within the scope of the business of the firm, and therefore one in which the plaintiff had no interest by virtue of the partnership articles. The same is true of the dealings of the defendant in lead and iron. They were not such dealings as he was authorized to engage in by the partnership articles, and were not within the scope of the business of the firm. Story on Part. § 193. *Wheeler* v. *Sage*, 1 Wallace, 518.

It follows, that, if the plaintiff is entitled to a share of the profits upon these transactions, it must be either upon the ground that they were undertaken by the defendant in fraud of the firm, or upon the ground that the parties made an agreement independent of the partnership articles, that they should be entered into and prosecuted upon joint account. And to entitle him to a decree upon either of these grounds it is necessary that the plaintiff should allege it in his bill. It is an elementary rule of equity pleading, that the bill must contain a clear and exact statement of all the material facts upon which the plaintiff's right to the relief sought depends, and that he can only introduce evidence of such facts as are thus stated. Story Eq. Pl. §§ 23, 251, 251 *a.* 1 Dan. Ch. Pract. (3d Am. ed.) 334, 364 and note. *Wright* v. *Dame*, 22 Pick. 55. The bill in this case only alleges that the partnership articles were executed, that business was conducted under and by virtue of them, and that a profit was realized from said business. It does not allege that there was an agreement that the cotton, lead and iron transactions were to be on joint account; nor that the defendant practised any fraud or misconduct which would make him liable to account for the profits of

these transactions. Upon the bill as it stands, the defendant can-not be held liable upon transactions not within the scope of the business of the firm, or the contemplation of the articles of copart-nership. To do so would be to permit the plaintiff to recover upon a case not stated in his bill, and of which the defendant was not informed by the pleadings so as to be prepared to meet it.

For these reasons, we are of opinion that the master erred in requiring the defendant to go into a hearing in regard to the cot-ton, lead and iron transactions, and that the defendant's excep-tions to his report must be sustained.     *Exceptions sustained.*

On May 21, 1870, after this decision, the plaintiff moved to amend his bill by adding allegations substantially as follows:

1. That, after the parties signed their written articles of part-nership, they agreed to engage in procuring lead, iron, cotton and other products and articles, on joint account, by purchase or ex-change of commodities, in the southern portion of the United States; that they procured such articles and products by use of their money, goods and credit, and of the time and services of the defendant and a large number of persons paid by him and the plaintiff jointly, and realized therefrom large profits; and that now the defendant falsely pretended that these transactions were his individual transactions, and that the plaintiff was not entitled to an account of or share in them, whereas the plaintiff was enti-tled to such an account and to an equal share with the defendant.

2. That, during the existence of their partnership under the written articles, the defendant, by representing to the plaintiff that iron, lead and cotton could be advantageously procured by using the money, goods and credit of the firm, and the time and labor of the defendant himself and of persons employed and paid by the firm, induced the plaintiff to tacitly consent to such a use of them, and the use was made, and large profits were thereby realized in the enterprises and ventures; but that, after the disso-lution of the firm, and after these enterprises and ventures had resulted in profit, the defendant falsely pretended that he never understood or agreed that the plaintiff was to share therein; and if in fact the defendant never did so understand or agree, and was

not liable to account to and share with the plaintiff on that ground, then that the conduct of the defendant was intentionally fraudulent, in inducing the plaintiff to consent to such a use of money, goods and credit of the firm, and time and labor of the defendant and employees of the firm, and injured the business of the firm, and so the defendant was bound to account to and share with the plaintiff.

The question "whether this amendment can and ought to be allowed at this stage of the proceedings in the case, and upon what terms," was reserved by *Wells*, J., for the determination of the full court, and argued in November 1870.

*Ranney & Converse*, for the plaintiff.

*Abbott & Browne*, for the defendant.   1. To grant the plaintiff's motion will violate the reasonable rule not to allow an amendment the effect of which is " to abandon the case originally made, and to make a new and distinct one."   *Pratt* v. *Bacon*, 10 Pick. 123, 128.   See also *Platt* v. *Squire*, 5 Cush. 557 ; *Sanborn* v. *Sanborn*, 7 Gray, 142 ; *Merchants' Bank* v. *Stevenson*, 7 Allen, 489 ; 1 Dan. Ch. Pract. (3d Am. ed.) 410, note 1, and cases there cited.   All the elements needful to a settlement of the suit on its present basis exist in that portion of the master's report to which no exceptions were taken.   The determination therefrom of the balances due to the parties respectively from the business done under the articles of partnership is mere matter of arithmetical computation.

2. The plaintiff's laches requires a denial of his motion ; especially as to that portion of the amendment which alleges fraud. See *Evans* v. *Bacon*, 99 Mass. 213 ; and cases cited in 1 Dan. Ch. Pract. 402, note 1 ; 406, note 3.   His omission to introduce his new allegations by a supplemental bill is conclusive that he seeks to allege nothing which arose after he began this suit on November 5, 1866.   See 1 Dan. Ch. Pract. 407, note 3.

3. To grant the plaintiff's motion will be inequitable, in enabling him to reap unjust advantages from a deliberately planned surprise, by which the defendant was forced to a sudden hearing on issues which he had no opportunity to join in framing by the pleadings, and for the trial of which at that time he was unpre-

pared even with the vouchers of large expenses which the nature
of his contract concerning the cotton is conclusive that he must
have incurred at Thomasville, but which, in the absence of such
vouchers, were necessarily disallowed. The court has decided
that to permit the plaintiff to recover upon the case as it stands
" would be to permit him to recover upon a case not stated in his
bill, and of which the defendant was not informed by the plead-
ings so as to be prepared to meet it."

4. There are no terms, upon which this amendment can be al-
wed, which will be an equivalent to the defendant for its allow-
nce; that is to say, which will put the parties into substantially
the same relative position as if no error had occurred.

MORTON, J. The court has power to allow amendments, in
any matter of form or substance, which may enable the plaintiff
to sustain the action for the cause for which it was intended to be
brought. Gen. Sts. *c.* 129, § 41. *Merchants' Bank* v. *Stevenson*,
7 Allen, 489. The granting or refusal of amendments is, how-
ever, within the discretion of the court. *Payson* v. *Macomber*, 3
Allen, 69. In the case at bar, it is unreasonable to doubt that the
plaintiff, when he brought his action, intended to include in it the
cause of action set forth in the proposed amendment. It is a
question therefore of discretion, whether, under the circumstances
of this case, the amendment shall be allowed.

We think that the laches of the plaintiff in not properly fram-
ing his bill, or in not moving for an amendment at an earlier
stage of the case, is not so great that it ought to deprive him of
the privilege of amending, upon such terms as shall protect the
defendant from injury. The question, whether the transactions
of the defendant in cotton, iron and lead were within the scope
of the partnership articles, and whether the plaintiff's claim to a
share of the profits realized therefrom could be tried under the
allegations of the original bill, was one upon which counsel might
honestly differ. The plaintiff's counsel might have doubted, until
the decision of the court, whether an amendment was necessary.

But the defendant ought not to be prejudiced by the error of
the plaintiff. As he alleges that he was taken by surprise at the
hearing before the master, and compelled, without due prepara-

tion, to meet this question of his transactions in cotton, iron and lead, of which he was not notified by the pleadings, it is clear that he ought not to be bound by the findings of the master upon this issue. The case therefore must be reopened, if the defendant so elects, for a new hearing so far as this issue is concerned.

We think also, that, as upon the bill as originally framed the defendant has prevailed, and the amendment introduces a substantially new cause of action, the plaintiff should pay the defendant's costs, and take no costs, if he prevails, up to this time. Upon these terms, the amendment may be allowed. The case is to stand for hearing before a single justice, who, upon proper application, after the answer to the amended bill is filed, will make the necessary disposition thereof. *Amendment allowed.*

To the amended bill the defendant answered, denying each and every allegation imputing an agreement between himself and the plaintiff for a joint interest in any business, not transacted under their written articles of partnership, in or in relation to lead, iron or cotton ; denying that he ever procured any cotton by purchase or exchange of commodities ; admitting his purchase of lead and iron, but alleging that it was on his sole and separate account ; admitting that under a contract with the treasury department of the United States he collected, rebaled and transported the cotton, as a personal office of a public nature ; denying any fraudulent use of money or credit of the firm, or time or services of its employees, and any fraudulent representations or fraud of any kind ; denying any use of the credit of the firm in his private enterprises, and any injury of the business of the firm by said enterprises ; denying any neglect of the business of the firm on his part ; and finally, denying that it was in the power of either partner to license by his consent, or prohibit by refusal of his consent, any private enterprises of the other. The defendant also elected not to reopen the case for another hearing before the master upon the new issues ; and it was again reserved, by *Colt*, J., as follows: " The amendment of the plaintiff's bill being allowed, and the defendant having elected to offer no more evidence and not to have the case recommitted to the master, but to take the

report of the master the same and with the same effect as if the bill was drawn originally as now amended, or the amendment had been allowed and filed before hearing before him, the case is reserved for the whole court upon the report and exceptions of the defendant thereto, as they now stand of record." Upon this reservation the case was argued in March 1872.

*Abbott & Browne,* (*Parmenter* with them,) for the defendant.

*Ranney,* for the plaintiff.

AMES, J. We have already decided, at an earlier stage of this case, that the controverted transactions in cotton, iron and lead were not within the scope of the written articles of association, and that, if the plaintiff is entitled to a share of the profits upon those transactions, it must be either upon the ground that they were undertaken or prosecuted by the defendant in violation of good faith towards his partner, or upon the ground that the parties made an agreement, independent of the written articles, that they should be matters of the joint account. The plaintiff has accordingly amended his bill in order to present his case in both these aspects. [Here followed, in the opinion, a discussion of the master's report and the evidence, which is omitted as relating solely to questions of fact ; and the opinion concluded as follows :] It is true that every reasonable presumption is to be taken in favor of a master's report, upon questions of fact referred to him depending upon conflicting evidence. The report in this case was made before the amendment of the bill, and when the matter of investigation was presented not precisely in its present aspect. But if the report is to be interpreted as a finding by the master that the partnership between these parties was by mutual agreement extended so as to include the controverted transactions in lead, iron and cotton, or that it was a fraud upon the plaintiff's rights for the defendant to engage in them, we find such clear proof of mistake on the master's part as to require us to set aside his conclusion. *Exceptions sustained.*

A final decree was rendered in favor of the defendant, for the sum found due to him by the master upon a settlement of the business exclusive of the transactions in lead, iron and cotton.