ARTHUR N. FULLER & others *vs.* TRUSTEES OF DEERFIELD ACADEMY & others.

Franklin.    December 10, 1924. — May 19, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Equity Jurisdiction*, Suit by ten taxable inhabitants. *Equity Pleading and Practice*, Amendment, Costs.

G. L. c. 40, § 53, is preventive and is not intended to give jurisdiction in equity for the correction of wrongs openly executed and wholly completed by municipal officers or agents.

A judge of the Superior Court has no jurisdiction or power, in granting a motion for leave to amend a bill in equity, to impose as terms, beyond the taxable costs, a condition that the plaintiff shall pay a certain amount to attorneys for the defendant as fees for services rendered in the litigation for the benefit of the clients whom they represent.

While it has been customary to allow but a single bill of costs for defendants in a suit in equity against several defendants, the determination of the question, whether separate costs or a single bill of costs shall be allowed, rests in sound judicial discretion. It was *held* in this suit that it could not be said that the awarding of bills of costs to the defendants severally exceeded judicial discretion.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Franklin on October 9, 1923, and afterwards amended, by forty-four taxable inhabitants of the town of Deerfield against the institutions and individuals described in the opinion, seeking an accounting for and repayment of moneys alleged to have been expended unlawfully by the town.

On the return day of the order of notice, the suit was transferred to the Superior Court "for final disposition."

The defendants demurred. The demurrer was heard by *Fosdick*, J., by whose order there were entered an interlocutory decree sustaining the demurrers, and an interlocutory decree dealing with the further amendment to the bill and a final decree dismissing the bill, both described in the opinion. The plaintiffs appealed.

*E. H. Abbot, Jr.,* & *J. W. Allen,* for the plaintiffs.
*J. Noble,* (*A. P. Loring* with him,) for the defendants.

RUGG, C.J. This is a suit in equity brought under G. L. c. 40, § 53, by ten or more taxable inhabitants of the town of Deerfield. The defendants are the trustees of the Deerfield Academy and Dickinson High School, hereafter called the academy, the town of Deerfield, hereafter called the town, and divers individuals alleged to be the selectmen, school committee, building committee and treasurer of the town. The allegations of the bill as amended, with which alone we are now concerned, in brief are that the academy is an educational corporation exclusively under private control and not a public school under the management of the town and not an institution of such character that the town could lawfully appropriate, pay or contribute public money to its aid or support under the eighteenth and forty-sixth Amendments to the Constitution of the Commonwealth, and that in each of the years from and including 1918 to 1923 the town has unlawfully appropriated and paid to the academy stated sums of money; that the individuals as officers of the town have aided and abetted in making these alleged unlawful payments, and that all concerned in the transactions were cognizant of their unlawful nature. The prayer of the bill is to compel an accounting to the town for these sums of money and a repayment thereof to the town by the other defendants. All the defendants demurred.

There is no general jurisdiction in equity in this Commonwealth "to entertain a suit by individual taxpayers to restrain cities and towns from carrying out invalid contracts, and performing other similar wrongful acts." *Steele* v. *Municipal Signal Co.* 160 Mass. 36, 38. *Larcom* v. *Olin,* 160 Mass. 102, 110. *Prince* v. *Crocker,* 166 Mass. 347, 358. *Sylvester* v. *Webb,* 179 Mass. 236, 241. *Kelley* v. *Board of Health of Peabody,* 248 Mass. 165, 169. The only ground on which residents of a municipality can invoke the aid of a court of equity with respect in general to the conduct of municipal affairs is set out in G. L. c. 40, § 53, in these words: "If a town or any of its officers or agents are about to raise or expend money or incur obligations purporting to bind said town for any purpose or object or in any manner other than that for and in which such town has the legal and con-

stitutional right and power to raise or expend money or incur obligations, the Supreme Judicial or Superior Court may, upon the petition of not less than ten taxable inhabitants of the town, determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such corporate power."

This statute is preventive. It is neither anticipatory nor retroactive. It was said in *Hood* v. *Mayor & Aldermen of Lynn,* 1 Allen, 103, 104, that the aim of this statute was "to furnish a prompt and effective remedy to restrain cities and towns from raising, borrowing, or expending money for purposes not authorized by law, and to enable a minority to guard their rights and interests, when such unlawful acts were threatened or in contemplation." It was held in *Carlton* v. *Salem,* 103 Mass. 141, that an anticipatory bill could not be maintained under this statute, but there must be allegations of actual vote to raise or to pay money or to pledge credit for an illegal purpose. A well grounded expectation of such conduct is not enough to confer jurisdiction under the statute. Some one of the facts described in the statute is essential as the basis for jurisdiction. The statute does not authorize, on the other hand, the correction of wrongs wholly executed and completed. It is not retroactive. It does not include within its words the redress of an evil that is past and gone. It does not afford the relief which is provided for minority stockholders in a business corporation to obtain for its benefit remedy for wrongs done to it by its officers. The principles illustrated by cases like *Brewer* v. *Boston Theatre,* 104 Mass. 378, and *Hayden* v. *Perfection Cooler Co.* 227 Mass. 589, cannot be invoked under this statute with any due regard to its words. Of course, no surreptitious attempt to outwit the statute, as in *Frost* v. *Belmont,* 6 Allen, 152, can be tolerated, and under such circumstances relief would be afforded even though there had been a payment under the illegal vote. *Russell* v. *Tate,* 52 Ark. 541, is a case similar to *Frost* v. *Belmont.* But nothing of that nature is set forth in the present bill. The acts of which complaint here is made must have been open and thoroughly known to everybody, because they are alleged

by implication to have been the result of votes or action taken in six successive years in that most public of all governmental assemblies, the town meeting of a New England town. The case of *Welch* v. *Emerson,* 206 Mass. 129, is no authority in support of the plaintiff's contention. Continued future payments were there contemplated. Decisions like *Webster* v. *Douglas County,* 102 Wis. 181, and *Chippewa Bridge Co.* v. *Durand,* 122 Wis. 85, are distinguishable because rendered in a State where the subject is within general equity jurisdiction and is not controlled by statute. But it is doubtful whether even under that doctrine the present bill sets out ground for relief. See *Frederick* v. *Douglas County,* 96 Wis. 411, and *First Wisconsin National Bank of Milwaukee* v. *Catawba,* 183 Wis. 220.

It follows that the demurrers were sustained rightly.

The order sustaining the demurrers gave permission to the plaintiffs to amend their bill on or before a named date on condition that the amendment be accompanied by $400 imposed as terms to be divided equally between two attorneys for the benefit of the several defendants whom they respectively represented. From this order the plaintiffs appealed. The plaintiffs moved to amend their bill after the demurrers were sustained, but the amendment by direction of the judge was not received and was returned and a final decree was entered dismissing the bill with costs to each defendant, because there was no compliance with the order to pay $400. From this the plaintiffs appealed. It is manifest that the order for the payment of $400 as terms for the amendment of the bill was not in way of costs. The total costs taxed in the final decree amounted only to $175.32. We infer that the order was founded on the idea that the court had power to impose as terms for the allowance of the amendment the equivalent of something in way of counsel fees for the defendants. We are of opinion that it was beyond the power of the court to impose such terms on any principle of equity practice now prevalent in this Commonwealth.

A nominal counsel fee is allowed as an item of taxable costs in civil causes. G. L. c. 261, § 23. Ordinarily no other attorney's fee is allowed. It is provided by G. L. c. 261, § 13,

that in suits in equity "costs shall be wholly in the discretion of the court, but no greater amount shall be taxed therein than is allowed for similar charges in actions at law." "Taxable costs are in contemplation of law full indemnity for the expenses of a party who is successful in a suit between party and party, whether at law or in equity. *Newton Rubber Works* v. *de las Casas,* 182 Mass. 436." *Rowland* v. *Maddock,* 183 Mass. 360, 365. *McIntire* v. *Mower,* 204 Mass. 233, 237.

It cannot be thought that the power to impose terms as a condition of allowing amendment of pleadings conferred in G. L. c. 231, § 5, authorizes the imposition of terms in excess of what could under any circumstances be included in taxable costs. If the rule making power of the courts under G. L. c. 213, § 3, Second, extends to such a matter, the court has not yet exercised its power to that end. No rule of court expressly or by implication authorizes such terms as were here imposed.

The allowance of counsel fees in excess of those included in taxable costs often has been made the subject of statutory regulation. The power to award counsel fees in contested will cases does not exist apart from express statute. G. L. c. 215, § 45. *Brown* v. *Corey,* 134 Mass. 249. *Willard* v. *Lavender,* 147 Mass. 15. *Ensign* v. *Faxon,* 224 Mass. 145, 148. The allowance of counsel fees in divorce and separate maintenance proceedings is founded on express statute. G. L. c. 208, § 17; c. 209, § 33. *Churchill* v. *Churchill,* 239 Mass. 443, 446. "Counsel fees" are allowed in the discretion of the court by G. L. c. 246, § 68, to persons summoned as trustees under trustee process. *Reynolds* v. *Missouri, Kansas & Texas Railway,* 224 Mass. 253. There is express provision for compensation for counsel of a guardian *ad litem* in suits in equity to quiet title to land. G. L. c. 240, § 9. Even the words, "costs and expenses," in a statute have sometimes been held not broad enough to include counsel fees, although in other connections such fees have been held to be so included. See the exhaustive review of cases of that nature by Hammond, J., in *Sears* v. *Nahant,* 215 Mass. 234. *Haczela* v. *Krupa,* 219 Mass. 261.

It is contended that the court has this power independently

of the statutes. "It is the common practice, in bills for instructions by executors or trustees, and in other cases, where the suit is brought to solve difficulties created by some ambiguity or obscurity in a will or other instrument, to allow costs, taxed as between solicitor and client, to be paid out of the estate or fund which is the subject of controversy." *Brown* v. *Corey*, 134 Mass. 249, 251. On this principle costs as between solicitor and client have frequently been allowed out of a fund. *Bigelow* v. *Morong*, 103 Mass. 287, 290. *Mandell* v. *Green*, 108 Mass. 277, 283. *Ricketson* v. *Merrill*, 148 Mass. 76, 84. *Davis* v. *Bay State League*, 158 Mass. 434. *Heard* v. *Heard*, 169 Mass. 216, 225. *Cashman* v. *Bangs*, 200 Mass. 498, 504. *Shannon* v. *Shepard Manuf. Co. Inc.* 230 Mass. 224, 236. *Carlson* v. *Revere Beach County Fair & Musical Railway Co.* 227 Mass. 291. *Guay* v. *Holland System Hull Co.* 244 Mass. 240, 247. In *Attorney General* v. *Old South Society in Boston*, 13 Allen, 474, a fund for a strict public charity and another fund for religious uses had become intermingled in the lapse of many years and an information was instituted to separate them. It was held at page 497: "As the intermingling by the defendants of the fund of the charity has afforded ground for this information, and the information is sustained in part, the costs incurred in support of it, taxed as between counsel and client, are to be paid out of the charity fund; and the defendants will bear their own costs." *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 484, was a case involving distribution of assets of an insolvent trust company, in process of liquidation by the commissioner of banks, between commercial and savings department depositors. Counsel were requested to prepare a brief and present arguments in behalf of depositors in the savings department whose individual interests were so small as to render it impracticable for any of them to retain counsel in their own behalf. That was held to be "a proper case under general equity jurisdiction for the allowance of costs as between solicitor and client." See also *Frost* v. *Belmont*, 6 Allen, 152, 164, 165. But this principle is of limited application and it rests on general principles of equitable

jurisprudence, which have no relevancy to a case like the present.

Cases where amounts paid for counsel fees constitute an element of damage in actions against a defendant arising out of wrongful conduct, like *Stiles* v. *Municipal Council of Lowell*, 233 Mass. 174, 183, 184, have no pertinency to this question.

Costs of plans and reasonably necessary views may be allowed and taxed in fee bill. *Stockbridge Iron Co.* v. *Cone Iron Works*, 102 Mass. 80, 89, 90. *Stewart* v. *Finkelstone*, 206 Mass. 28, 38. That principle, also, is remote from the case at bar.

The result is that the order as to the payment of $400 as terms on which the bill might be amended was in excess of the power of the court.

The decision in *Manchester* v. *Hodge*, 75 N. H. 502, at first sight seems opposed to this conclusion. As explained in *Jacques* v. *Manchester Coal & Ice Co.* 78 N. H. 248, 250, and in *Barber* v. *George R. Jones Shoe Co.* 80 N. H. 507, 511, 517, we are of opinion that it is not in conflict with the result we have reached.

The disposition of the motion to amend the bill rested wholly in sound judicial discretion. One amended bill already had been allowed. The motion for further amendment might have been denied. *Merchants' Bank of Newburyport* v. *Stevenson*, 7 Allen, 489. *Reno* v. *Cotter*, 236 Mass. 556, 563. It might have been allowed upon severe terms as to costs. *Drew* v. *Beard*, 107 Mass. 64, 77. But it ought to be considered on its merits apart from consideration of the extraordinary terms imposed by the order.

The error in the interlocutory order requires a reversal of the final decree dismissing the bill. In that decree separate bills of costs were awarded to each of the several defendants. Whether separate costs or a single bill of costs be allowed rested in sound judicial discretion. G. L. c. 261, § 13. It has been customary to allow but a single bill of costs in suits against several defendants. *Whelan* v. *Exchange Trust Co.* 214 Mass. 121, and cases there collected. See, as to costs in actions at law, *Peabody* v. *Minot*, 24 Pick.

329, 334. *Mathers* v. *Cobb*, 3 Allen, 467. It cannot be said to exceed judicial power to award several bills of costs in a case like the present.

So much of the order of September 3, 1924, as allowed the plaintiffs to amend their bill on or before September 8, 1924, and imposed the payment of $400, a moiety to each of two counsel, as terms of such allowance, and the order of September 8, 1924, and the final decree, are reversed. The case is to stand for further proceedings not inconsistent with this opinion.

*Ordered accordingly.*