## COMMISSIONER OF INSURANCE *vs.* MASSACHUSETTS ACCIDENT COMPANY.

Suffolk.    March 8, 1945. — May 8, 1945.

Present: FIELD, C.J., LUMMUS, DOLAN, & SPALDING, JJ.

*Equity Pleading and Practice,* Costs.    *Attorney at Law.    Receiver.* ·

Statement by LUMMUS, J., of the exceptions to the general principle of law that a litigant must bear his own expenses except so far as his burden is mitigated by a statute awarding him taxable costs.

In a liquidation by a receiver of an insurance company involving claims of many policyholders of different classes, wherein two attorneys, representing certain policyholders but not appointed by any court, rendered services which were successful in that this court decided in accordance with some of their contentions, whereby their clients and other policyholders similarly situated gained substantially at the expense of other classes of policyholders but no money was brought into the receivership estate and no incursion upon it was warded off and there was no common benefit to all the policyholders, the circumstances justified an exercise of judicial discretion denying the attorneys compensation for such services either out of the receivership estate generally or out of any fund consisting of the benefits received by the class of policyholders benefiting from their efforts.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on April 6, 1944, in the proceedings described in the opinion.

The petition was heard by *Qua,* J.

*C. Silbert & C. I. Peterson,* for Silbert and Foley, appellants.

*A. B. Casson,* for the receiver.

LUMMUS, J.    On August 23, 1939, the petitioner, the commissioner of insurance, filed a petition against the respondent, an accident and health insurance company, seeking his appointment as receiver "to rehabilitate such company and conserve its assets" under G. L. (Ter. Ed.) c. 175, §§ 180A–180L, inclusive, inserted by St. 1939, c. 472, § 3. On that day he was appointed temporary receiver, and on August 30, 1939, permanent receiver.    On February 2, 1940,

the commissioner brought another petition under § .180C, alleging. the insolvency of the respondent, and on February 23, 1940, a single justice ordered its liquidation by the commissioner as permanent receiver.

There were about thirty-five thousand holders of cancellable term policies, and four thousand nine hundred sixty-six holders of noncancellable term policies, about eleven hundred of which were renewable at the same premium for life and the remainder of which were so renewable up to a certain age. The cancellable business was profitable and desirable, but the noncancellable business had become very unprofitable as the policyholders grew older, and was the major factor in causing the insolvency of the company.

By an agreement entered into by the receiver with the approval of a single justice on February 23, 1940, many of the outstanding policies issued by the respondent company to policyholders who assented to the agreement were assumed by a Maine corporation known as Union Mutual Life Insurance Company. The Union company assumed all cancellable policies, and was to be paid money representing a part of the unearned premium reserve on such policies, money needed to liquidate the liability for incurred and unpaid claims and the expenses thereof, and premiums which might be received thereafter on such policies. The holder of such a policy was given an option to refuse the novation provided for by the agreement and to take his share in liquidation.

The noncancellable policyholders were made the subject of a different provision, for the Union company took the unprofitable noncancellable business only for the purpose of acquiring the profitable cancellable business, and would not assume such unprofitable business except with limitations. That provision was complicated, and need not be explained in detail. In substance the receiver turned over to the Union company, to form a "non-can fund," assets of the value of more than a million dollars, in which "non-can fund" the noncancellable policyholders were to have rights, not equal to those given them by the terms of the policies but smaller proportionate rights, which rights the Union

company agreed to give them in the place of the respondent company. The holder of such a policy was given an option to refuse the novation provided for by the agreement and to take his share in liquidation.

The terms of the agreement are more fully stated in the opinion in *Commissioner of Insurance* v. *Massachusetts Accident Co.* 314 Mass. 558, 561–563.

The receiver retained about half a million dollars in part for the purpose of liquidation of claims not assumed by the Union company. Of the four thousand nine hundred sixty-six noncancellable policyholders, one hundred eighty-seven were then disabled. Of the one hundred eighty-seven disabled policyholders, one hundred eighty-two assented to the novation and five refused it. Of the remaining four thousand seven hundred seventy-nine nondisabled noncancellable policyholders, four thousand four hundred seventy-eight assented to the novation and three hundred one refused it. Proofs of claim were filed by one hundred fifty-eight of the nonassenting nondisabled noncancellable policyholders, and by the five nonassenting disabled noncancellable policyholders. Of these one hundred sixty-three claimants just mentioned, seventy-nine held policies renewable for life, and eighty-four held policies renewable to the age of sixty. More than sixty appearances were filed by counsel for different policyholders.

Whether any of the holders of cancellable policies refused to assent to the novation does not appear in the record. It does not appear that any of them sought to prove claims in liquidation. The questions argued when the case was here before concerned the rights of noncancellable policyholders.

The only question argued on this appeal is the correctness of the action of a single justice in dismissing the petition of Coleman Silbert and Henry E. Foley, Esquires, for compensation for legal services performed in the hearing and argument of the case reported as *Commissioner of Insurance* v. *Massachusetts Accident Co.* 314 Mass. 558. Those counsel first appeared before a single justice on behalf of one Newman Silbert and one Walter G. Schelker, Junior, who were holders of noncancellable policies, and later joined with a

number of other lawyers in representing those two noncancellable policyholders and fourteen others. Before the full court they apparently represented the same sixteen noncancellable policyholders, out of one hundred sixty-three policyholders who filed claims.

The petitioners, on behalf of their clients, were successful in that the full court decided in accordance with their contentions (a) that the claims of nondisabled holders of noncancellable policies were not barred from participation in the distribution because "contingent," (b) that they were entitled to share pari passu with· the claims of disabled policyholders, and (c) that the master was right in setting the value of the cancellable business at $200,000. *Commissioner of Insurance* v. *Massachusetts Accident Co.* 314 Mass. 558, 563–568, 576, 577, 582, 583. They were unsuccessful in two other contentions (d) that "each nondisabled holder of a noncancellable policy is entitled to damages equal to that sum of money which would have enabled him to purchase the same or a substantially similar policy from a solvent company," and (e) that the claims of assenting policyholders, assigned to the receiver, could not compete with the claims of nonassenting policyholders. *Ibid.* 569–571, 578–582. If this last contention had been sustained, their clients would have been paid in full, and there might have been a "surplus" for distribution under § 180H.

We start with the general principle that a litigant must bear his own expenses, except so far as his burden is mitigated by a statute awarding him taxable costs. *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258. *Boynton* v. *Tarbell,* 272 Mass. 142, 144. *Abrams* v. *Scandrett,* 138 Fed. (2d) 433, 436.

Besides a statutory exception applicable to cases originating in a Probate Court,[1] that general principle is subject to a number of exceptions in equity practice.

---

[1] "In contested cases before a probate court or before the supreme judicial court on appeal, costs and expenses in the discretion of the court may be awarded to either party, to be paid by the other, or may be awarded to either or both parties to be paid out of the estate which is the subject of the controversy, as justice and equity may require. In any case wherein costs and expenses, or either, may be awarded hereunder to a party, they may be

(1) Where in proceedings involving the liquidation and distribution of assets a question arises between one class of distributees and another, of such small financial consequence to any one distributee that he could hardly be expected to finance litigation concerning it, and yet of such importance to the correct distribution of the fund that the court requests counsel to present the case for some class of distributees, the fees of such counsel may be ordered paid out of the fund. *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 484, explained in *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258, 263. *Robinson* v. *Mutual Reserve Life Ins. Co.* 189 Fed. 347. *Clark* v. *Goldman,* 124 Fed. (2d) 491. *In re New York Investors, Inc.* 130 Fed. (2d) 90.

(2) Where difficulty in the administration of an estate or trust is caused by some ambiguity or obscurity in a will or other instrument, the costs and expenses of litigation thereby caused, taxed as between solicitor and client, may be ordered paid out of the fund. *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258, 263. *Sawyer* v. *Baldwin,* 20 Pick. 378, 389. *Bigelow* v. *Morong,* 103 Mass. 287, 290. *Barker* v. *Monks,* 315 Mass. 620, 630.

(3) Where a litigant at his own expense has been successful in creating, preserving, protecting or increasing a fund in which others have a right to share, the court having control of that fund may order the payment of counsel fees or costs as between solicitor and client out of the fund, upon the petition of the litigant or in some jurisdictions upon the petition of his attorneys (compare *Boynton* v. *Tarbell,* 272 Mass. 142), or the court may make the right of others to share in the fund conditional upon their con-

---

awarded to his counsel or may be apportioned between them. Execution may issue for costs awarded hereunder." G. L. (Ter. Ed.) c. 215, § 45. The provision for expenses, as distinguished from costs, was added by St. 1884, c. 131. *Lewis* v. *National Shawmut Bank,* 303 Mass. 187, 189. The provision for award directly to counsel was inserted by St. 1931, c. 120, § 1. Before that statute the award was to the party. *Conley* v. *Fenelon,* 266 Mass. 340, 344. *Boynton* v. *Tarbell,* 272 Mass. 142. This statute permits an award of costs as between solicitor and client, or counsel fees. *Willard* v. *Lavender,* 147 Mass. 15. *Conley* v. *Fenelon,* 266 Mass. 340. *Wiley* v. *Fuller,* 310 Mass. 597, 603. The statute applies to Probate Courts in equity cases as well as in strictly probate cases. *Lewis* v. *National Shawmut Bank,* 303 Mass. 187.

tributing proportionately to the expenses of the litigation. *Davis* v. *Bay State League*, 158 Mass. 434. *Carlson* v. *Revere Beach County Fair & Musical Railway*, 227 Mass. 291. *Shannon* v. *Shepard Manuf. Co. Inc.* 230 Mass. 224, 236. *Guay* v. *Holland System Hull Co.* 244 Mass. 240, 247. *Sagalyn* v. *Meekins, Packard & Wheat Inc.* 290 Mass. 434, 440, 441. *Shaw* v. *Harding*, 306 Mass. 441, 450. *Central Railroad & Banking Co.* v. *Pettus*, 113 U. S. 116. *United States* v. *Equitable Trust Co.* 283 U. S. 738, 744. *Wallace* v. *Fiske*, 80 Fed. (2d) 897, 107 Am. L. R. 726. *Thomas* v. *Peyser*, 118 Fed. (2d) 369. *O'Hara* v. *Oakland County*, 136 Fed. (2d) 152. *Monaghan* v. *Hill*, 140 Fed. (2d) 31. *Lea* v. *Paterson Savings Institution*, 142 Fed. (2d) 932. *Hempstead* v. *Meadville Theological School*, 286 Penn. St. 493, 49 Am. L. R. 1145. *Harris's Appeal*, 323 Penn. St. 124. *Cintas* v. *American Car & Foundry Co.* 133 N. J. Eq. 301; *S. C.* 135 N. J. Eq. 305.

The Massachusetts decisions have not yet gone beyond the classes of cases already stated, in all of which an allowance is discretionary and not a matter of strict right. But there are cases in other jurisdictions that uphold a discretionary power to allow counsel fees in cases not within the familiar classes already noticed. In *Sprague* v. *Ticonic National Bank*, 307 U. S. 161, the petitioner delivered money to the respondent bank in trust, and under the trust agreement part of the money was deposited by the respondent in its savings department. The rest went into the commercial department, and was secured by bonds. The bank failed. The petitioner obtained a decree establishing a lien on the bonds to the amount of the trust funds. Fourteen other trusts benefited by the decision under the doctrine of stare decisis, and it was held within the power of the court to order the expenses of litigation paid out of the proceeds of the bonds. The court said (page 167), "When such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation — the absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decree — hardly touch the power of equity in doing jus-

tice as between a party and the beneficiaries of his litigation."

And where as a result of litigation some claimants received benefits at the expense of others, the difficulties in ascertaining the persons benefited and the amount of the benefits received as a result of the services of counsel for one of the class have not always prevented a decree distributing the expense among the class actually benefited. *Nolte* v. *Hudson Navigation Co.* 47 Fed. (2d) 166. *Smith* v. *Kroeger,* 138 Ohio St. 508. Compare *Attorney General* v. *North American Life Ins. Co.* 91 N. Y. 57; *Abbott, Puller, & Myers* v. *Peyser,* 124 Fed. (2d) 524; *Warren* v. *Palmer,* 132 Fed. (2d) 665; *Lea* v. *Paterson Savings Institution,* 142 Fed. (2d) 932.

Without deciding, we assume in favor of the appellants (1) that the law of this Commonwealth accepts all the principles established elsewhere permitting such an award, (2) that the appellants have standing to maintain a petition for compensation, notwithstanding *Boynton* v. *Tarbell,* 272 Mass. 142, (3) that an appeal in a case like this may be maintained for the sole purpose of revising the exercise of discretion in the allowance of costs as between solicitor and client (*Newton* v. *Consolidated Gas Co. of New York,* 265 U. S. 78; *Du Bois* v. *Kirk,* 158 U. S. 58, 67; *Donald Campbell & Co. Ltd.* v. *Pollak,* [1927] A. C. 732; *Bew* v. *Bew,* [1899] 2 Ch. 467; *Taylor* v. *Dowlen,* L. R. 4 Ch. 697), and (4) that on such an appeal the question before this court is not merely whether there was an abuse of discretion amounting to error of law (as intimated in *Carlson* v. *Revere Beach County Fair & Musical Railway,* 227 Mass. 291, 292, *Boynton* v. *Tarbell,* 272 Mass. 142, 146, *North Adams National Bank* v. *Curtiss,* 284 Mass. 330, 336, *Blassengame* v. *Boyd,* 178 Fed. 1, and *Harris* v. *Twentieth Century-Fox Film Corp.* 139 Fed. [2d] 571), but rather whether, allowing substantial weight to the opinion of the single justice, the discretion is shown to have been wrongly exercised. *Old Colony Trust Co.* v. *Third Universalist Society of Cambridge,* 285 Mass. 146, 151. *Long* v. *George,* 296 Mass. 574, 579. *Coe* v. *Coe,* 313 Mass. 232, 235. *Greene* v. *Cronin,* 314 Mass. 336, 344.

*Trustees* v. *Greenough*, 105 U. S. 527, 537. *Stuart* v. *Boulware*, 133 U. S. 78. *Cintas* v. *American Car & Foundry Co.* 135 N. J. Eq. 305. Compare, as to the review of discretion at law, *Bartley* v. *Phillips*, 317 Mass. 35.

The single justice found in substance that the petitioners "performed their work with ability and skill," that "they were helpful to the court," and that "it was desirable that someone should press most of the contentions made by them." He found that they did not create any fund for the benefit of the nondisabled holders of noncancellable policies. He declined to find that but for the aid of the petitioners the court would have ordered the estate wrongly distributed. But he found that as a result of the decision of the full court the nonassenting nondisabled noncancellable policyholders did gain substantially more than the receiver would have allowed them. He found that the petitioners rendered their services "primarily in the interests of their own clients and without special regard to their helpfulness to the estate as a whole." Obviously the fund in the hands of the receiver was incapable of increase, and a method of distribution of it that was favorable to one set of claimants was necessarily unfavorable to some other set. The single justice stated: "It was always the duty of the receiver to distribute the fund properly.[1] No money has been brought into the fund and no incursion upon the fund has been warded off. There has been no common benefit to all the beneficiaries. Some of the beneficiaries have profited by the decision, but only at the expense of others."

There was no action at any time in the case with respect to classifying the different questions and the particular policyholders who would benefit by particular answers to those questions. There was no assignment by any justice of counsel to present the views of those similarly interested. Each counsel in the case represented his own clients and those only. The single justice stated: "There has been duplication of work, and representation has not strictly

---

[1] See *Geiger* v. *Peyser*, 123 Fed. (2d) 167; *Peoples-Pittsburgh Trust Co.* v. *Pittsburgh United Corp.* 334 Penn. St. 107; *Penington* v. *Commonwealth Hotel Construction Corp.* 18 Del. Ch. 238, 241.

followed the lines of interest. Thus not all of the group for which the petitioners Silbert and Foley claim to speak have been benefited by all the rulings in respect to which the contentions of these counsel prevailed. Some of the group have profited by some of these rulings at the expense of others of the same group."

Even if there is no rule of law which would preclude the granting of compensation to the appellants, the circumstances pointed out by the single justice amply justified his exercise of discretion by denying them compensation, either out of the receivership estate generally or out of some fund consisting of the benefits resulting to the class of policyholders who may have been benefited by their efforts on behalf of their particular clients.

*Decree affirmed with costs.*